In re SHAWN BEASLEY, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. SHAWN BEASLEY, Respondent-Appellant.)

First District (4th Division) No. 61709

Opinion filed January 28, 1976.

James J. Doherty, Public Defender, of Chicago (Harold A. Cowen and Frances G. Sowa, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael J. Angarola, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Respondent, Shawn Beasley, brings this appeal from an order of the circuit court, Juvenile Division, wherein he was adjudged to be a delinquent and was committed to the Department of Corrections. The order was entered pursuant to respondent's admission that on July 20, 1974, he committed the offense of burglary in that without authority he knowingly entered a railroad shanty with the intent to commit therein a theft in violation of section 19—1 of the Illinois Criminal Code. Ill. Rev. Stat. 1973, ch. 38, par. 19—1.

On appeal respondent contends that (1) his due process rights were violated when the court accepted his admission to burglary without proper admonishment, and (2) the court did not comply with the provisions of the Juvenile Court Act in that it failed to determine that an adjudication of delinquency and commitment to the Department of Corrections were in his best interests.

The facts of the instant cause are not in dispute. On July 30, 1974, the County Department of the Juvenile Division filed a petition for adjudication of wardship against respondent. The petition alleged that respondent, a minor, was a delinquent by reason of the fact that he committed a burglary as described above. The Public Defender was appointed to represent him. When the cause came up for trial on August 6, 1974, the Public Defender informed the court that there was going to be an admission. He stated that respondent had been advised of his constitutional rights, and that after having been so advised had elected to waive those rights and make an admission to the charge. The following courtroom colloquy then occurred:

"THE COURT: Young man, were you advised of your legal Constitutional Rights when you spoke to the lawyer?

THE RESPONDENT: Yes.

THE COURT: And were you advised that you had a right to deny the burglary and that you had a right to trial in court?

THE RESPONDENT: Yes.

THE COURT: That you have a right to have your lawyer cross-examine all state's witnesses in open court? And you're presumed innocent until proven guilty beyond a reasonable doubt? That you have a right to have the state's attorney prove his case beyond a reasonable doubt? And that you admit to the burglary?

THE RESPONDENT: Yes.

THE COURT: Without any promises?

THE RESPONDENT: Yes.

THE COURT: And do you understand that I could send you away to the Department of Corrections?

THE RESPONDENT: Yes.

THE COURT: Voluntary admission, no finding, state?

MR. RAAB: Social, your Honor.

THE COURT: Social investigation, date?

THE ADJUDICATOR: September 11, 1974, at 1:30 Calendar 2."

On October 16, 1974, the court conducted a dispositional hearing. After hearing evidence, the court adjudged respondent to be a delinquent and committed him to the Department of Corrections.

We first consider the contention that the court inadequately admonished respondent prior to its acceptance of his admission. Respondent premises this contention on the belief that Supreme Court Rule 402 is applicable to juvenile proceedings. (Ill. Rev. Stat. 1973, ch. 110A, par. 402.) More particularly, respondent contends that the court failed to determine whether his plea was voluntary, neglected to inform him of the nature of the charge or the possible consequences of his admission, and failed to determine whether there was a factual basis for the admission.

■■ In the case of *In re Gault*, 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428, the United States Supreme Court held that a minor who appears before a juvenile court on the issue of delinquency is entitled to proceedings which measure up to the essentials of due process of law. The Supreme Court defined the "essentials" of due process as including the right to notice of charges, the right to counsel, the right to confront and cross-examine witnesses, and the right against self-incrimination. However, the Court, quoting from *Kent v. United States*, 383 U.S. 541, 16

L.Ed.2d 84, 86 S.Ct. 1045, further stated, "We do not mean \* \* \* to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing \* \* \*.'" (387 U.S. 1, 30, 18 L.Ed.2d 527, 584.) It is clear from this language that the Supreme Court noted fundamental differences between adult and juvenile proceedings, and recognized that to make the full panoply of criminal rights applicable to juvenile proceedings would endanger their unique character and necessarily diminish their effectiveness.

The unique character of Illinois juvenile proceedings is perhaps best demonstrated by exploring the purpose and policy of the Juvenile Court Act. Section 1—2 of the Act reads as follows:

"(1) The purpose of this Act is to secure for each minor subject hereto such care and guidance, preferably in his own home, as will serve the moral, emotional, mental, and physical welfare of the minor and the best interests of the community; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety or the protection of the public cannot be adequately safeguarded without removal; and, when the minor is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should be given by his parents, and in cases where it should and can properly be done to place the minor in a family home so that he may become a member of the family by legal adoption or otherwise.

(2) In all proceedings under this Act the court may direct the course thereof so as promptly to ascertain the jurisdictional facts and fully to gather information bearing upon the current condition and future welfare of persons subject to this Act. This Act shall be administered in the spirit of humane concern, not only for the rights of the parties, but also for the fears and the limits of understanding of all who appear before the court.

(3) In all procedures under this Act, the following shall apply:

a) The procedural rights assured to the minor shall be the rights of adults unless specifically precluded by laws which enhance the protection of such minors.

b) Every child has a right to services necessary to his proper development, including health, education and social services.

c) The parents' right to the custody of their child shall not prevail when the court determines that it is contrary to the best interests of the child.

(4) This Act shall be liberally construed to carry out the foregoing purpose and policy." (Ill. Rev. Stat. 1973, ch. 37, par. 701—2.)

Thus, as stated *In re Armour,* 59 Ill. 2d 102, "The first purpose of [the] statute is not to punish but to correct. [Citation.] Society is interested for its own sake as well as for the minor's individual welfare in guiding and rehabilitating * * *. Study, care and patience may be called for to meet an individual minor's need." 59 Ill. 2d 102, 104-05.

In addition to this difference in purpose between juvenile and adult proceedings, there exist numerous other distinctions. For example, a juvenile does not have a right to a jury trial in a delinquency proceeding. (*In re Fucini,* 44 Ill. 2d 305, 255 N.E.2d 380.) Nor does a minor have a right to a public trial. (Ill. Rev. Stat. 1973, ch. 37, par. 701—20(6).) A minor does not have the right to release on recognizance or bail pending a delinquency adjudication. (*United States ex rel. Burton v. Coughlin* (7th Cir. 1972), 463 F.2d 530.) A petition for adjudication of wardship may be verified upon mere information and belief. (Ill. Rev. Stat. 1973, ch. 37, par. 704—1(2).) Furthermore, a delinquent minor may be incarcerated for a period in excess of the maximum for an adult. (*United States ex rel. Wilson v. Coughlin* (7th Cir. 1973), 472 F.2d 100.) All of these substantive and procedural variations give juvenile proceedings a unique character and operate to further a rehabilitative purpose.

One further distinction must be noted with regard to admissions and guilty pleas. When an adult enters a guilty plea, he stands before the court ready to be sentenced and sentence must be entered. Accordingly, the admonitions of Rule 402 are particularly significant, for the consequences of the plea are both immediate and mandatory. However, the same cannot be said of proceedings under the Juvenile Court Act. When a minor admits to an offense, the court is not compelled to enter a finding of delinquency. Rather, the court is obligated to conduct a dispositional hearing and cannot adjudge the minor to be a ward of the court unless it finds that such a determination is in the best interests of both the minor and the public. (Ill. Rev. Stat. 1973, ch. 37, par. 704—8.) Thus, the juvenile court has a twofold obligation. First, the court must determine whether in fact the minor committed the offense for which he is charged. Second, the court then must determine whether a finding of delinquency should be entered. Accordingly, when a minor admits to an offense, he eliminates only the need to determine whether he committed it.

With this background it is questionable whether the admonitions of Rule 402 constitute an "essential" element of due process and therefore

are required by *In re Gault*. In fact, strict compliance with Rule 402 is impossible in juvenile proceedings. Minors cannot be admonished of their right to a jury trial, for they have none. Similarly, the minimum and maximum sentences prescribed for adults do not apply to juveniles. The question of whether Supreme Court Rule 402 applies to juvenile proceedings has obvious importance. However, we do not believe the disposition of the instant appeal requires us to make that determination.

The record indicates that respondent, who was 14 years old, was currently on supervision. The petition for adjudication of wardship set forth the factual basis of the offense with which he had been charged. The record further shows that respondent was represented by counsel who had access to the court file and its contents. Counsel consulted with the minor, discussed the charge and advised him of his constitutional rights prior to informing the court of his election to admit the charge. Before accepting his admission, the court asked respondent whether he knew that he had the right to deny the burglary, the right to a trial, the right to have his lawyer cross-examine State witnesses in open court, and that he was presumed innocent until proven guilty beyond a reasonable doubt. Respondent answered in the affirmative to each question. The court then asked respondent whether he admitted to the burglary. He replied that he did and that his admission was made without any promises. Finally, the court informed respondent that he could be sent away to the Department of Corrections.

■■ Admittedly, these questions were asked in a rather shotgun fashion. Nevertheless, in our opinion the proceedings reflect substantial compliance with Supreme Court Rule 402. The court had an opportunity to observe the boy when questioning him and to determine whether he understood the nature of the crime and the consequences of his admission. Moreover, we cannot ignore the fact that respondent was represented by counsel. As stated in *In re Gault*, "The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege [against self-incrimination]. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary * * *." (387 U.S. 1, 55, 18 L. Ed. 2d 527, 561.) Thus, the United States Supreme Court recognizes that juvenile courts may rely, at least to some degree, on the effective discharge by counsel of his obligation to advise his client of constitutional rights. We believe the proceedings measured up to the essentials of due process and fair treatment as required by *In re Gault*. The record amply supports our conclusion that respondent, under the totality of the proceedings, understood the nature of the charge and intelligently and voluntarily admitted the crime.

Respondent next contends that the court did not comply with the provisions of the Juvenile Court Act when it adjudged him to be a delinquent. The contention is based on section 4—8(2) of the Act which provides that such a determination can only be made where it is in the best interest of the minor. (Ill. Rev. Stat. 1973, ch. 37, par. 704—8(2).) Respondent argues that he may have been an emotionally disturbed child rather than a delinquent, and that consequently a finding of delinquency was not in his best interests.

The record reveals that the court conducted a dispositional hearing on October 16, 1974, after a social investigation had been made. At the hearing a probation officer informed the court that respondent currently was under supervision for six months. He believed the boy had problems in terms of his ability to grasp right and wrong. He had been in Presbyterian-St. Luke's and Tinley Park, and each of those institutions was unable to provide the kind of treatment he needed. He had been transferred from school to school because of behavior problems. The probation officer further testified that he spoke with respondent's mother who had ten other children. She stated that she held a job and consequently could not supervise the child at all times. Respondent was her only child who presented a behavior problem. Further testimony showed that respondent had friends who also were known to the juvenile court and who had an negative influence on him. He would go to parties and not return until two in the morning.

■■ We cannot say that the court failed to consider the best interests of respondent at the time it adjudged him to be a ward of the court. The contrary is true. The court conducted a full dispositional hearing and the evidence supports the court's determination.

Finally, respondent contends that the court violated section 5—10 of the Juvenile Court Act in that it failed to determine that commitment to the Department of Corrections was in his best interests. (Ill. Rev. Stat. 1973, ch. 37, par. 705—10.) The argument is made that the court should have considered hospitalization as an alternative. Fault is found with the court's statement that the Department of Corrections would hospitalize the boy if necessary.

Section 5—10 of the Act provides *inter alia* that a court may sentence a minor to the Department of Corrections if it finds that the parents are unwilling or unable to discipline the minor, and the best interests of the minor and the public will not be served by placement under section 5—7. The record reveals that after the finding of delinquency, the court inquired whether there was any reason why it should not commit respondent to the Department of Corrections. Defense counsel objected to commitment and asked if there were any relatives with whom the boy

could be placed. Respondent's mother answered that there were not. She also added that she was of the opinion that she could not control him. The probation officer testified that he believed the boy should be placed in the Department of Corrections, for it provided the kind of structured environment he needed.

■■ We reject the contention that the court ignored respondent's need for hospitalization. It is clear from the record that the court held an extensive hearing to consider the boy's background and problems, and in its judgment the boy's best interest was to be committed to the Department of Corrections.

For the foregoing reasons the judgment of the Juvenile Division of the circuit court is affirmed.

Affirmed.

ADESKO and DIERINGER, JJ., concur.