(No. 48351.–)
(No. 48389.–)

*In re* SHAWN BEASLEY, a Minor, Appellant (The People of the State of Illinois, Appellee).—*In re* ROBERT CHATMAN, a Minor, Appellee (The People of the State of Illinois, Appellant).—*In re* DANIEL BUTLER, a Minor, Appellee (The People of the State of Illinois, Appellant).

*Opinion filed March 23, 1977.—Rehearing denied May 26, 1977.*

386

James J. Doherty, Public Defender, and David Hirschboeck, of Chicago (Frances Sowa, Donald S. Honchell, John Thomas Moran, Assistant Public Defenders, of counsel), for appellant Shawn Beasley and appellees Robert Chatman and Daniel Butler.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Theodore A. Gottfried, State Appellate Defender, of Springfield (Robert Agostinelli, Deputy Defender, and Verlin R. Meinz, Assistant Defender, of the office of the State Appellate Defender, of Ottawa, and Robert Davison, of the office of the State Appellate Defender, of Springfield, of counsel), *amicus curiae.*

MR. JUSTICE RYAN delivered the opinion of the court:

This case involves three proceedings in the circuit court of Cook County under the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 701—1 *et seq.*). In each case the minor respondent admitted the allegations of the delinquency petition which charged that he had committed a crime. Each minor was adjudged to be a delinquent

and was committed to the Department of Corrections and each appealed. The appellate court affirmed the judgment as to Shawn Beasley. (35 Ill. App. 3d 816.) Another division of the Appellate Court for the First District reversed the judgments as to Robert Chatman (36 Ill. App. 3d 227) and as to Daniel Butler (36 Ill. App. 3d 234). We allowed petitions for leave to appeal, and the cases were consolidated in this court. The common issue concerns what standards must guide a trial judge in assessing the due process sufficiency of juvenile delinquency proceedings wherein minors make admissions of guilt.

In this court all three minors argue that due process requires the trial judge in a juvenile proceeding to substantially comply with Supreme Court Rule 402 (58 Ill. 2d R. 402) before accepting an admission by the minor that he committed the act alleged in the delinquency petition. They argue that the requirements of Rule 402 are indispensable to a determination of whether a minor has voluntarily and intelligently made an admission.

From the language of the rule it is apparent that it was adopted for the purpose of assuring certain procedural rights to defendants in criminal proceedings. Nothing in the rules suggests its intended application to other than criminal cases. Section 2—9 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—9) clearly indicates that proceedings under the Act are not criminal. Although such a proceeding retains certain adversary characteristics, it is not in the usual sense an adversary proceeding, but it is one to be administered in a spirit of humane concern for and to promote the welfare of the minor as well as to serve the best interests of the community. Ill. Rev. Stat. 1975, ch. 37, par. 701—2.

The full expectation of the separate and distinct treatment of juveniles under the various State juvenile court acts has not been realized (see *Kent v. United States,* 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045; *In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428; *In re*

*Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068), and certain due process safeguards normally associated with criminal proceedings have been extended for the protection of juveniles to accord to them fundamental fairness. However, "the juvenile court proceeding has not yet been held to be a 'criminal prosecution'." (*McKeiver v. Pennsylvania,* 403 U.S. 528, 541, 29 L. Ed. 2d 647, 658, 91 S. Ct. 1976.) As observed in *McKeiver,* it is not indicated that to assure the concept of fundamental fairness a juvenile proceeding should be developed into a fully adversary process or that the idealistic prospect of an intimate, informal protective proceeding be abandoned and the juveniles returned to the criminal court.

In support of our conclusion that Rule 402 was not intended to apply to other than criminal cases, we note that Rule 402 is contained in article IV of the Supreme Court Rules, which is entitled "Rules on Criminal Proceedings in the Trial Court." As the Supreme Court held in *McKeiver,* this court has held that delinquency proceedings, although subject to the protection of due process, are not criminal in nature. (See also *People ex rel. Hanrahan v. Felt,* 48 Ill. 2d 171; *In re Fucini,* 44 Ill. 2d 305; *In re Urbasek,* 38 Ill. 2d 535.) The observation that Rule 402 was never intended for use in delinquency proceedings finds further support in the fact that one of the admonitions required by the rule, that of the "defendant's" right to trial by jury, is wholly inapplicable to proceedings in juvenile court, where the respondent does not have a right to a jury trial. *People ex rel. Carey v. White,* 65 Ill. 2d 193; *In re Presley,* 47 Ill. 2d 50; *In re Fucini.*

In addition, Rule 402 is addressed to the standards for acceptance of pleas of guilty, but not to admissions, the juvenile equivalent of such pleas. "A plea of guilty is more than a confession which admits that the accused did various acts; *** nothing remains but to give judgment and determine punishment." (*Boykin v. Alabama* (1969), 395 U.S. 238, 242, 23 L. Ed. 2d 274, 279, 89 S. Ct. 1709,

1711-12.) An admission, however, merely authorizes the court to find the minor to be delinquent. If the judge makes such a finding but decides that an adjudication of wardship is not in the best interests of the minor and the public, he may, even after an admission, dismiss the petition and discharge the minor. Ill. Rev. Stat. 1975, ch. 37, par. 704—8(1).

We further disagree with the contention of the minors that section 1—2(3)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—2(3)(a)) requires the use of Rule 402 in juvenile proceedings. That section of the Act provides: "The procedural rights assured to the minor shall be the rights of adults unless specifically precluded by laws which enhance the protection of such minors." Since, as noted above, the specific requirements of Rule 402 are not applicable to the peculiar protective procedures granted to juveniles, in the context of the instant case the quoted language from the Act means only that admissions in a Juvenile Court Act proceeding are entitled to protection at least equal to that constitutionally required for the making of guilty pleas in criminal trials. That is, the admission must be made intelligently and voluntarily, though not necessarily in accordance with Rule 402. *Boykin v. Alabama* held that it is error for a trial judge to accept a guilty plea without an affirmative showing that it is intelligent and voluntary; to do so would be a deprivation of due process. Though delinquency proceedings are subject to due process safeguards by virtue of both section 1—2(3)(a) of the Act and the holdings of *In re Gault, In re Kent* and *In re Winship,* it does not follow that use of Rule 402 is the only manner in which the protection of *Boykin* can be extended to such proceedings. Indeed, we have held that Rule 402 goes beyond the requirements of due process, in that not all its provisions are constitutionally mandated. *People v. Nardi,* 48 Ill. 2d 111.

*Boykin* and its progeny make clear precisely what the record must show before a guilty plea can be accepted as

voluntary and intelligent, and thus free of due process deficiencies. It was said in *Boykin* that a plea of guilty involves a waiver of the constitutional rights against compulsory self-incrimination, to trial by jury, and to confront one's accusers. The Supreme Court held that a voluntary and intelligent waiver of these rights cannot be presumed from a silent record.

Subsequently, it was held that *Boykin* does not require a trial court to recite to a defendant a litany of the rights which are waived by a guilty plea. What is required is that the record show an affirmative awareness of the consequences of a guilty plea. (*United States v. Frontero* (5th Cir. 1971), 452 F.2d 406, 415; *United States v. Ready* (4th Cir. 1972), 460 F.2d 1238; *Wade v. Coiner* (4th Cir. 1972), 468 F.2d 1059, 1060-61; *McChesney v. Henderson* (5th Cir. 1973), 482 F.2d 1101; *Lockett v. Henderson* (5th Cir. 1973), 484 F.2d 62; *Fontaine v. United States* (6th Cir. 1975), 526 F.2d 514; *Casebeer v. United States* (9th Cir. 1976), 531 F.2d 949.) We agree with this assessment of *Boykin,* and we therefore hold that it was not necessary that the three minors involved in the present appeal be told by the trial judges that their admissions waived their rights against self-incrimination and their rights to confront their accusers, the two *Boykin* rights that are applicable to juvenile proceedings. It is sufficient to satisfy due process requirements that it be apparent from the record that the minors were aware of the consequences of their admissions; that is, that they understood their rights against self-incrimination, their rights to confront their accusers and their rights to a trial; that by the admissions they waived these rights and that the waiver conferred upon the court the authority to treat them in a manner authorized by the Juvenile Court Act.

The petition in Beasley's case alleged that the minor was delinquent in that he committed the offense of burglary by entering a railroad shanty without authority with intent to commit therein a theft. At the hearing, the

court, the respondent and the respondent's court-appointed counsel, Mr. Musberger, engaged in the following colloquy:

"MR. MUSBERGER: There is going to be an admission.

THE COURT: All right.

MR. MUSBERGER: Your Honor, the Respondent has been advised of his Constitutional Rights and after being so advised, he has elected to waive those rights and make an admission to the charge.

THE COURT: Young man, were you advised of your legal Constitutional Rights when you spoke to the lawyer?

THE RESPONDENT: Yes.

THE COURT: And were you advised that you had a right to deny the burglary and that you had a right to trial in court?

THE RESPONDENT: Yes.

THE COURT: That you have a right to have your lawyer cross-examine all state's witnesses in open court? And you're presumed innocent until proven guilty beyond a reasonable doubt? That you have a right to have the state's attorney prove his case beyond a reasonable doubt? And that you admit to the burglary?

THE RESPONDENT: Yes.

THE COURT: Without any promises?

THE RESPONDENT: Yes.

THE COURT: And do you understand that I could send you away to the Department of Corrections?

THE RESPONDENT: Yes."

In the Chatman case, the petition charged the minor with committing the offense of robbery in that by threatening the use of force he took $11.80 from the person of Leroy O'Neal. Two other minors are also involved in this offense. At the hearing, Mr. Fishman, an assistant public defender, represented Chatman and the following occurred in court:

"MR. FISHMAN: Present with Robert Chatman, is his mother.

Your Honor, pursuant to a pretrial conference with

the State's Attorney's office, and after advising him of his right to a trial in this case, we are making an admission to the charge, your Honor. There will be also an admission as to the other co-respondents in this matter; however, the dispositions that will be ordered are different.

THE COURT: Okay.

\* \* \*

THE COURT: All right. Robert Chatman, how old are you?

THE RESPONDENT CHATMAN: I am 14.

\* \* \*

THE COURT: Now, each of you understand that you are charged with robbery, that is, by threatening the use of force to 11-year-old Leroy O'Neal, on the second day of August, 1974?

THE RESPONDENTS: Yes.

THE COURT: Now, you understand that you are entitled to a trial and that you don't have to make an admission in Court, and that you have the right to have the State's Attorney bring in whatever evidence they have to prove the case beyond a reasonable doubt?

THE RESPONDENTS: Yes, sir.

THE COURT: And when you make an admission it is true that you did commit a robbery, and you have given up your right for a trial? Each of you understand that?

THE RESPONDENTS: Yes.

THE COURT: Do each of you understand it is a delinquent Petition, and if you were found to be delinquent by the Court, the Court would have the power to remove you from your homes and place you in a State institution, or we might place you on probation or possibly on supervision, but one of those three things could happen as a result of what you did? Do you understand that?

THE RESPONDENTS: Yes.

THE COURT: All right. Then understanding what I've said, each of you still wishes to make an admission to what you did, robbery? Chatman first.

THE RESPONDENT CHATMAN: Yes, sir.

\* \* \*

THE COURT: Then we will enter the admission."

In the Butler case the petition alleged that the minor committed the offense of murder by shooting Peter

George. It also charged him with unlawful use of weapons by carrying a .32-caliber revolver on his person, with the offense of illegal person harboring a firearm in that the minor being under the age of 18 knowingly carried and possessed a .32-caliber revolver, and with the offense of involuntary manslaughter in causing the death of Peter George.

The last charge by leave of court was added by an amendment to the petition. At the hearing, Mr. Vaughns represented the minor and Mr. Solganick was the assistant State's Attorney who prosecuted the petition. The following colloquy occurred:

"MR. SOLGANICK: *** Pursuant to a pre-trial conference, Counsel has indicated to me that there would be an admission to Counts Two and Four *** alleging the offenses of unlawful use of weapon and of involuntary manslaughter.

MR. VAUGHNS: That is correct, Your Honor.

MR. SOLGANICK: Pursuant to that agreement, the State had indicated that it would recommend to the Court a finding of delinquency as to Counts Two and Four. ***

THE COURT: *** [W]hat is your name, son?

DANIEL BUTLER: Daniel Butler.

THE COURT: How old are you?

DANIEL BUTLER: Fourteen.

THE COURT: Do you go to school?

DANIEL BUTLER: Uh huh.

MR. VAUGHNS: Say, 'Yes, sir.'

THE COURT: You do go to school. What school?

DANIEL BUTLER: Moseley.

THE COURT: Moseley. And what grade are you in there?

DANIEL BUTLER: Eighth.

THE COURT: Can you read and write?

DANIEL BUTLER: Yes, sir.

THE COURT: Your lawyer tells me he has advised you of your Constitutional rights to the charges against you.

DANIEL BUTLER: Yes, sir.

THE COURT: All right. You know about that. You know you are entitled to a trial, to have the witnesses

against you brought into Court, have them testify, to have your lawyer cross-examine them to be sure they are telling the truth. Do you understand that?

DANIEL BUTLER: Yes, sir.

THE COURT: And, do you know that Court will do everything in its power to obtain for you any witnesses who exist who could testify in your favor? Do you understand that?

DANIEL BUTLER: Yes, sir.

THE COURT: You have the right to remain silent at your trial. Do you understand that?

DANIEL BUTLER: Yes, sir.

THE COURT: And, do you know that if you admit to this charge, I am going to find you delinquent and commit you to the Department of Corrections this afternoon? Do you understand that?

DANIEL BUTLER: Yes, sir.

THE COURT: Now, knowing all of those things, Daniel, do you admit that on or about the 15th day of July, this year, you had, unlawfully in your possession, a thirty-two caliber revolver?

DANIEL BUTLER: Yes, sir.

THE COURT: And, that on that day that you had occasion—without going into the circumstances—to fire that pistol or cause it to be discharged in such a way that resulted in the death of one Peter George?

DANIEL BUTLER: Yes, sir.

THE COURT: You did that?

DANIEL BUTLER: Yes, sir.

THE COURT: All right. There will be leave to withdraw the denials.

Accept the admission to Counts number Two and Four."

In each case the minor was represented by counsel who had informed him of his constitutional rights and appeared with him in court. The Supreme Court in *Gault* acknowledged the protective role of counsel in proceedings involving admissions by minors and stated:

"The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege [against

self-incrimination]. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." 387 U.S. 1, 55, 18 L. Ed. 2d 527, 561, 87 S. Ct. 1428, 1458.

The clear implication of this language is that the courts can, to a degree, at least, rely upon the protection which a minor receives through the representation of counsel in assuring that the admissions are voluntary and are not made in ignorance of his rights.

In the three cases now before us, in addition to each minor being represented by counsel, the court addressed each one and ascertained that he knew that he had a right to deny allegations of the petition and require the State to prove the charges against him; to have a trial by the court and to confront the State's witnesses. Each was also informed that as a result of the admission the court could commit the minor to a State institution. In addition to these admonishments common to all three proceedings each judge further interrogated the minor concerning his understanding of his rights. We believe that the record in each of these cases discloses that the minors understood the consequences of their admissions. These warnings and interrogations, together with the fact that each minor was represented by counsel who stated he had informed his client of his constitutional rights which could be waived by an admission, lead us to conclude that the admissions made in these cases were voluntary and intelligent in nature and comported in all respects with the requirements of due process.

The judgment of the appellate court in cause No. 48351, *In re Beasley,* is affirmed. In cause No. 48389, *In re Chatman* and *In re Butler,* the judgments of the

appellate court are reversed and the judgments of the circuit court of Cook County are affirmed.

*48351 — Judgment affirmed.*
*48389 — Appellate court reversed; circuit court affirmed.*