*In re* ALBERT TINGLE, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* ALBERT TINGLE, Respondent-Appellant.)

First District (5th Division)    No. 76-1291

Opinion filed August 19, 1977.

James Geis and David Mejia, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Mary Ellen Dienes, and Paul E. Kelly, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Respondent, Albert Tingle, a minor, appeals from an adjudication of delinquency[1] rendered by the circuit court under the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—1 *et seq.*) (the Act) and presents

---

[1] As will be made clear from the opinion rendered in this case, the proper verbiage would be "an adjudication of wardship based upon a finding of delinquency."

the following issues for review: (1) whether the trial court's admonishment as to the potential consequences of his judicial admission was inadequate; and (2) whether the trial court deprived itself of jurisdiction to render a dispositional order by failing to explicitly adjudicate wardship.

It appears the respondent had been under the supervision of the juvenile court since 1973 pursuant to several petitions stating that he was ungovernable. (Ill. Rev. Stat. 1973, ch. 37, par. 702—3.) Then on March 20, 1975, a petition seeking an adjudication of wardship was filed based upon the allegation that he was delinquent in having committed the offenses of unlawful use of a weapon (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(1)) and robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—1). Initially, he denied the unlawful use of a weapon; however, after a discussion with the State through his counsel he sought to withdraw the denial and enter an admission. After ascertaining his age and general proficiency at linguistic skills, the court engaged in the following admonishment:

"THE COURT: You have been charged with U.U.W. That is carrying a knife around that had a four and one half inch blade. Do you know about that?

MR. TINGLE: Yes, sir.

THE COURT: Now, that is a criminal offense. You have a right to a trial. You have a right to have the witnesses who know something about it, come in and tell what they saw, what they heard, and what they did.

Your lawyer, the Public Defender, could question them to be sure they weren't mistaken and weren't lying about you.

The Court would help you to bring in anybody who could testify in your favor.

You could be silent at your trial. You wouldn't have to say anything or do anything, and that couldn't be held against you.

I would have to be convinced beyond a reasonable doubt that you did what you are accused of.

Do you understand that?

MR. TINGLE: Yes, sir.

THE COURT: If you admitt [sic] to this charge, your punishment will be for me to choose.

I don't have to keep any promises that anybody made to you by anybody else.

Do you understand that?

Now, with those things, do you want to tell me what happened on March 9th, when you were accused of having that knife?"

Whereupon, respondent testified that on the date in question he was carrying a knife in his pocket as he walked to his friend's house and was stopped by the police, which admission was accepted by the court.

During the subsequent hearing, the court was apprised of the conditions of respondent's home life and his prior record and then entered a finding of delinquency "and based upon the recommendation in the social investigation report, the nature of the offense and the nature of the youths [*sic*] prior offenses" ordered him commited to the Department of Corrections.

OPINION

Respondent first contends that in juvenile proceedings due process of law requires the acceptance of judicial admissions only after admonishments made in substantial compliance with Supreme Court Rule 402. (Ill. Rev. Stat. 1975, ch. 110A, par. 402.) His position is that the admonishment given him was inadequate because it omitted a statement outlining the various dispositional orders which the court may render under the Act. (Ill. Rev. Stat. 1975, ch. 37, par. 705—2(1)(a).) We cannot agree, as we consider *In re Beasley* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024, to be dispositive of this issue. After finding Rule 402 inapplicable to juvenile admissions, the supreme court in *Beasley* stated:

"It is sufficient to satisfy due process requirements that it be apparent from the record that the minors were aware of the consequences of their admissions; that is, that they understood their rights against self-incrimination, their rights to confront their accusers and their rights to a trial; that by their admissions they waived these rights and that the waiver conferred upon the court the authority to treat them in a manner authorized by the Juvenile Court Act." (66 Ill. 2d 385, 362 N.E.2d 1024, 1027.)

Further, *Beasley*, in quoting *In re Gault* (1967), 387 U.S. 1, 55, 18 L.Ed.2d 527, 561, 87 S. Ct. 1428, 1458, noted the protective role of counsel in assisting the trial court to achieve assurance that the admission was voluntary as opposed to coerced and knowing rather than " 'the produce of ignorance of rights or of adolescent fantasy, fright, or despair. [Citation.]' " 66 Ill. 2d 385, 397, 362 N.E.2d 1024, 1029-30.

■■ Here, respondent was represented by counsel who informed the trial court that he had discussions with the State and his client, with the result that the latter wished to make an admission. Whereupon, the court questioned respondent to determine whether its communications were being satisfactorily understood by him. After he answered affirmatively, he was admonished in a clear fashion that he had a right to trial, to the confrontation of witnesses against him, to compel the attendance of those in his favor, to maintain silence, to not have his silence construed against him, and to be adjudged delinquent only upon proof of his commission of the offense beyond a reasonable doubt. After replying that he understood, respondent was further cautioned that upon waiving these rights his

punishment was for the court to choose and that it was not bound to acquiesce in any promises which may have been made to him. Because respondent sought to make an admission only after a discussion with his counsel and because he exhibited an understanding of the thorough admonishment by the court of his rights and the consequences of a waiver of them, we believe that the proceedings wherein respondent's admission was accepted comport with due process.

■■ Respondent's next contention is that because the adjudication of wardship does not explicitly appear of record, the circuit court lacked jurisdiction to render a dispositional order. He has not, however, taken the position that an adjudication of wardship is not implicitly raised by the record. Our review of the record convinces us that such a view would have been untenable, and we would note further that if no such adjudication had been made, we would have no jurisdiction and a dismissal of the appeal would be required. Section 4—8(3) of the Act provides that "[a]n adjudication of wardship * * * is a final order for purposes of appeal" (Ill. Rev. Stat. 1975, ch. 37, par. 704—8(3)) and, consequently, absent an adjudication of wardship, there would remain only a finding of delinquency, which was not an appealable order (*In re Smith* (1976), 37 Ill. App. 3d 1028, 347 N.E.2d 423).[2] The sole question before us then is whether an explicit expression denoting that an adjudication of wardship has taken place is a jurisdictional requirement.

The circuit court has original jurisdiction in all justiciable matters. (Ill. Const. 1970, art. VI, §9.) While the term "justiciable matters" has not been defined and its meaning is left to the courts to work out on a case by case basis (Ill. Ann. Stat., Ill. Const. 1970, art. VI, §9, Constitutional Commentary, at 473 (Smith-Hurd 1971)), we believe that the justiciability of proceedings pursuant to a petition seeking an adjudication of wardship based upon allegations of delinquency cannot be seriously questioned. We reach this conclusion for the following reasons: first, because the relief sought in the petition, an adjudication of wardship, was legislatively provided for in section 4—8 of the Act (Ill. Rev. Stat. 1975, ch. 37, par. 704—8); and second, and with perhaps greater significance, the Illinois

[2] Defendant filed his notice of appeal on July 7, 1975. Effective October 1, 1975, Supreme Court Rule 662(a) provided: "An appeal may be taken to the Appellate Court from an adjudication of wardship in the event that an order of disposition has not been entered within 90 days of the adjudication of wardship." (Ill. Rev. Stat. 1975, ch. 110A, par. 662(a).) In an apparent effort to attain consistency with the 1970 Constitution, the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 1 *et seq.*) and the Supreme Court Rules (Ill. Rev. Stat. 1975, ch. 110A, par. 1 *et seq.*), the legislature repealed section 4—8(3) effective October 1, 1976 (Ill. Ann. Stat., ch. 37, par. 704—8 (Smith-Hurd 1977 Supp.)). The Committee Comments indicate that the legislative compliance with Rule 662(a) would not affect the adjudication of wardship's character as a final judgment, as the purpose of the rule is judicial efficiency; *i.e.,* because a dispositional hearing and order closely follow the adjudication of wardship in time, the appeal ought to be forestalled until after the disposition of the case. Ill. Ann. Stat., ch. 110A, par. 662, Committee Comments, at 439 (Smith-Hurd 1976).

Supreme Court has recognized the justiciable character of the relief sought by providing in its Rule 660 that "[a]ppeals from final judgments [which includes an adjudication of wardship under section 4—8(3) of the Act] in delinquent minor proceedings \* \* \* shall be governed by the rules applicable to criminal cases." (Ill. Rev. Stat. 1975, ch. 37, par. 704—8(3), ch. 110A, par. 660.) Although this rule was not effective until October 1, 1975, we think it and its predecessor (Ill. Rev. Stat. 1973, ch. 37, par. 704—8(3), ch. 110A, par. 661) strongly imply that an adjudication of wardship based upon a finding of delinquency involves a justiciable matter.

Nonetheless, respondent argues that section 4—8(2) of the Act delimits the jurisdiction of the circuit court. This section provides in pertinent part:

> "If the court finds that the minor is [delinquent, otherwise in need of supervision, neglected or dependent] and that it is in the best interests of the minor and the public that he be made a ward of the court, the court shall *note in its findings* whether he is delinquent, otherwise in need of supervision, neglected or dependent, specifying which of [the definitional] Sections is applicable, and shall adjudge him a ward of the court and proceed at an appropriate time to a dispositional hearing." (Emphasis added.' (Ill. Rev. Stat. 1975, ch. 37, par. 704—8(2).)

We find this argument of a limited jurisdiction to be without merit on two grounds.

■■ First, where the intent of the legislature is clearly expressed in the language of the statute, there is no room for judicial interpretation. (*Department of Public Works & Buildings v. Wishnevsky* (1972), 51 Ill. 2d 550, 283 N.E.2d 872.) We think the language underlined above in section 4—8(2) clearly exhibits the legislative intent that only a finding of either delinquency, otherwise in need of supervision, neglected or dependent must be specifically noted or recorded in the trial court's findings and, while this section also provides that an adjudication of wardship must be made, it does not require that it be explicitly noted as it does the other findings mentioned.

Second, even assuming the existence of an ambiguity in the verbiage which could permit a judicial construction that an explicit notation of wardship is mandated, respondent's interpretation that such a requirement is jurisdictional must be rejected.

■■ The constitution is supreme and whatever the purpose of the people in placing a restriction upon legislation, it must be obeyed. (*Sutter v. People's Gas Light & Coke Co.* (1918), 284 Ill. 634, 120 N.E. 562.) Any legislative action contrary to the constitution "is unconstitutional and void." (*Board of Trustees v. Webb* (1974), 24 Ill. App. 3d 183, 185, 321 N.E.2d 127, 128.) Furthermore, it is our duty as a court of review to

construe acts of the General Assembly in such a way as to promote their essential purposes and to avoid, if possible, a construction which would raise doubts as to their validity. (*Stubblefield v. City of Chicago* (1971), 48 Ill. 2d 267, 269 N.E.2d 504.) "As a consequence, the rule of construction has arisen that where a statute is susceptible of two differing constructions—one which will render it constitutional and the other which will not—the former construction will be adopted if it can reasonably be done. [Citations.]" *Meadows v. Grabiec* (1974), 20 Ill. App. 3d 407, 415, 314 N.E.2d 283, 289. Accord, *Board of Education v. Ellis* (1975), 60 Ill. 2d 413, 328 N.E.2d 294, *appeal dismissed* (1975), 423 U.S. 908, 46 L. Ed. 2d 137, 96 S. Ct. 209.

Here, we believe the purpose of the legislature as stated in section 4—8(2) of the Act was to assure that the minor be found either delinquent, otherwise in need of supervision, neglected or dependent prior to the time that the best interests of the minor and the public are considered in adjudicating wardship. To do otherwise might appear to compromise those findings in cases where placement in a foster or adoptive home would offer the child greater financial security and educational opportunities. Viewing the explicit adjudication of wardship as procedural would effectuate this purpose and would allow any aggrieved party to challenge its omission by a timely objection in the trial court.

■■ Consequently, we conclude that where a justiciable matter is involved, as it is here, in order to give validity to the legislative action, the adjudiciation of wardship under section 4—8(2) of the Act must be construed as a procedural matter which, although it may be attacked in the trial court, may not be raised for the first time on appeal. *Woman's Athletic Club v. Hulman* (1964), 31 Ill. 2d 449, 454, 202 N.E.2d 528. See also *People v. Gilmore* (1976), 63 Ill. 2d 23, 344 N.E.2d 456; *Lopin v. Cullerton* (1977), 46 Ill. App. 3d 378, 361 N.E.2d 6.

■■ Respondent here, having failed to raise this question in the trial court, is deemed to have waived the issue for purposes of appeal. *Woman's Athletic Club v. Hulman.* See also *Gowdy v. Richter* (1974), 20 Ill. App. 3d 514, 524, 314 N.E.2d 549; *Maroney v. Maroney* (1969), 109 Ill. App. 2d 162, 249 N.E.2d 871.

We would note further that respondent relied upon *In re Barr* (1976), 37 Ill. App. 3d 10, 344 N.E.2d 517, but we must depart from *Barr* and its progeny to the extent that they held the explicit expression of an adjudication of wardship to be jurisdictional.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.