*In re* S.K., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. S.K., Respondent-Appellant).

Second District   No. 84—1111

Opinion filed November 6, 1985.

Steven Clark and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko and Virginia M. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

In juvenile proceedings, the respondent, S.K., upon his admission to an allegation in an amended petition stating he committed the offense of resisting a peace officer, was adjudicated a delinquent and made a ward of the court. Following a dispositional hearing, respondent was committed to the Department of Corrections.

Respondent raises the following issues on appeal: (1) whether his admission was involuntarily and unintelligently entered where the trial judge did not admonish him of the consequences of his admission; (2) whether the trial judge erred in making him a ward of the court after his admission rather than after the dispositional hearing as mandated by statute; (3) whether the trial judge complied with the provisions in section 5—2(1)(a)(5) of the Juvenile Court Act; (4) whether respondent, who was adjudicated a delinquent for a misdemeanor offense, could be committed to the Department of Corrections where an adult may not be committed to the Department of Corrections upon a conviction of a misdemeanor; and (5) whether the respondent's indeterminate sentence to the Department of Corrections violates due process.

Respondent, who was represented by a deputy public defender, admitted he committed the offense of resisting a peace officer (Ill. Rev. Stat. 1983, ch. 38, par. 31—1) as alleged in an amended petition filed under the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 701—1 *et seq.*). Two other offenses alleged therein were then withdrawn by the State. Respondent was read the allegation regarding the offense of resisting a peace officer by the trial judge and acknowledged that he understood what was charged and that the allegation was true. The trial judge then informed respondent as follows:

"THE COURT: Okay. Now, I don't want you to tell me you did something if you didn't do it. You have a right to deny it, in which event the State would have witnesses come in and testify. Mr. Meyering could cross-examine those witnesses.

You'd have a right to present witnesses and evidence to tell your side of it. No one can force you to testify unless you choose to do so.

In short, you are entitled to a trial.

Now, when you stand here and tell me this paragraph is true, there would be no sense in having a trial. You're waiving a trial and all the rights that would go along with one.

Do you understand?

RESPONDENT MINOR: Yes."

Thereafter, the trial judge entered a finding of delinquency and made respondent a ward of the court. A separate dispositional hearing was then scheduled.

At the dispositional hearing, a 16-page juvenile social history report prepared by a probation officer was submitted to the court and, attached thereto, was a 13-page psychological report concerning respondent written by Clyde B. Kelly, Ph.D. Briefly summarized, the probation officer's report indicated that respondent has a history of delinquency with most of the prior charges being station adjusted or stricken on leave to reinstate; that respondent had been admitted to Maryville Academy from October 17, 1980, to September 20, 1981; that respondent, currently enrolled at Hinsdale South High School in the ninth grade and who academically "didn't do badly" at Lincoln Junior High, has the potential to function in the average range of intellectual ability, but has significant physiological and emotional learning disabilities; and that his mother believes he has a strong involvement with drugs. The probation officer recommended that respondent's long history of inconsistent discipline and guidance at home, coupled with his and his mother's limited insight and judgment, aggravated by an apparently serious drug problem, makes his return home next to impossible and he should be committed to the Department of Corrections.

The psychological report stated that testing showed respondent's I.Q. is 83 and his reading at the fifth grade level; that he has low average intellectual ability, though in practical judgment, in school learning, and in his understanding of the world he is functioning at a mildly to borderline retarded level; that his mother feels she has no control over her son; and that S.K.'s antisocial personality strongly suggests referral to the Department of Corrections.

No other evidence was submitted at the dispositional hearing and, following arguments of counsel, respondent was committed to the Department of Corrections. Respondent filed a lengthy motion to withdraw the admission and vacate the judgment contending, *inter alia*, that prior to entering his admission he had not been advised of the minimum and maximum disposition prescribed by law for the alleged charge and that the court did not determine if he understood the maximum punishment, both in violation of Supreme Court Rule 402. The motion was denied.

Respondent first contends that the trial judge failed to admonish him of the consequences of his admission and, in particular, the potential for commitment to the Department of Corrections. Although respondent acknowledges on appeal that Supreme Court Rule 402 (87 Ill. 2d R. 402), applicable to criminal cases, does not apply to juvenile court proceedings (*In re Beasley* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024), he maintains that his admission was not voluntarily and intelligently entered due to the court's failure to admonish him of the consequences of making the admission. He also argues that his borderline mental retardation level, as shown by the psychological report, is further proof that his admission was not voluntarily and intelligently entered without a prior admonition of the possible consequences of his admission.

The State responds that the respondent's admission was made in the presence of his counsel, and the assistance of his counsel can be relied upon to assure that the minor was aware of the consequences of his admission. The State further argues that several appellate court decisions have held that the trial court is not required to outline the various dispositional orders which could be entered, citing *In re R.B.* (1980), 81 Ill. App. 3d 462, 401 N.E.2d 568, *In re Tingle* (1977), 52 Ill. App. 3d 251, 367 N.E.2d 287, and *In re Fornizy* (1977), 48 Ill. App. 3d 107, 365 N.E.2d 512.

Both the respondent and the State cite *In re Beasley* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024, as the authoritative Illinois decision concerning the due process safeguards extended for the protection of minors in juvenile court proceedings to accord to them fundamental fairness. In *Beasley*, our supreme court held that in accepting an admission by a minor that he committed the act alleged in a delinquency petition, the trial judge is not obligated to follow the requirements of Supreme Court Rule 402, which was adopted for the purpose of assuring certain procedural rights to defendants in criminal proceedings. (66 Ill. 2d 385, 389-91, 362 N.E.2d 1024.) The court stated, however, what was necessary to satisfy due process requirements in accepting an admission in juvenile court proceedings, as follows:

> "It is sufficient to satisfy due process requirements that it be apparent from the record that the minors were aware of the consequences of their admissions; that is, that they understood their rights against self-incrimination, their rights to confront their accusers and their rights to a trial; that by the admissions they waived these rights and that the waiver conferred upon the court the authority to treat them in a manner authorized by the Juvenile Court Act." (66 Ill. 2d 385, 392, 362 N.E.2d 1024.)

In *Beasley*, as contrasted with the instant case, the minors in the three

consolidated cases all were in some fashion advised by the trial court of their possible placement in the Department of Corrections or in a State institution.

While *Beasley* did not address the precise issue before us, other reasoning in *Beasley* is particularly instructive to resolving the issue at hand. In concluding that a minor's admission must be made intelligently and voluntarily, the court stated:

"We further disagree with the contention of the minors that section 1—2(3)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—2(3)(a)) requires the use of Rule 402 in juvenile proceedings. That section of the Act provides: 'The procedural rights assured to the minor shall be the rights of adults unless specifically precluded by laws which enhance the protection of such minors.' Since, as noted above, the specific requirements of Rule 402 are not applicable to the peculiar protective procedures granted to juveniles, in the context of the instant case the quoted language from the Act means only that admissions in a Juvenile Court Act proceeding are entitled to protection at least equal to that constitutionally required for the making of guilty pleas in criminal trials. That is, the admission must be made intelligently and voluntarily, though not necessarily in accordance with Rule 402. *Boykin v. Alabama* held that it is error for a trial judge to accept a guilty plea without an affirmative showing that it is intelligent and voluntary; to do so would be a deprivation of due process. Though delinquency proceedings are subject to due process safeguards by virtue of both section 1—2(3)(a) of the Act and the holdings of *In re Gault, In re Kent* and *In re Winship*, it does not follow that use of Rule 402 is the only manner in which the protection of *Boykin* can be extended to such proceedings. Indeed, we have held that Rule 402 goes beyond the requirements of due process, in that not all its provisions are constitutionally mandated. *People v. Nardi*, 48 Ill. 2d 111." 66 Ill. 2d 385, 391, 362 N.E.2d 1024.

■■ Thus, it is evident from *Beasley* that an admission by a minor of a delinquent act in a juvenile court proceeding is entitled to protection at least equal to that which is constitutionally required for the making of guilty pleas in criminal trials. As stated in *Boykin v. Alabama* (1969), 395 U.S. 238, 244, 23 L. Ed. 2d 274, 280, 89 S. Ct. 1709, in criminal cases the trial judge has the responsibility to make sure the accused has a full understanding of what the plea connotes and of its consequences. The trial court is best advised to conduct on the record an examination which should include, *inter alia*, an attempt to satisfy

itself that a defendant understands the permissible range of sentences. (*Boykin v. Alabama* (1969), 395 U.S. 238, 244 n.7, 23 L. Ed. 2d 274, 280 n.7, 89 S. Ct. 1709, 1713 n.7.) While *Boykin* was a criminal case, the due process guarantee that a guilty plea be shown to be intelligent and voluntary is equally applicable to admissions of delinquent acts in juvenile court proceedings under the holding in *Beasley.*

The record in this case discloses that the trial judge failed to advise respondent of any of the possible dispositions authorized under the Juvenile Court Act. In *Beasley* and in the appellate cases cited and relied on by the State, there was some minimal admonishment of possible punishment. *In re R.B.* (1980), 81 Ill. App. 3d 462, 401 N.E.2d 568 (minor was told, although incorrectly, of possible placement in an institution until age 21); *In re Tingle* (1977), 52 Ill. App. 3d 251, 367 N.E.2d 287 (minor was told punishment up to court to determine); *In re Fornizy* (1977), 48 Ill. App. 3d 107, 365 N.E.2d 512 (minor told punishment was for court to determine and issue on appeal was that court was required to inform minor of minimum and maximum sentence).

Standard 3.2G of the Institute of Judicial Administration, American Bar Association Juvenile Justice Standards (1980) requires the trial court to inform the minor of the dispositional consequences that could result from the tendered admission. In *In re Appeal in Maricopa County Juvenile Action No. J—86715* (1979), 122 Ariz. 300, 303, 594 P.2d 554, 557, the court of appeals of Arizona determined that due process standards require that before an admission by a juvenile is entered, the record must disclose that the juvenile was aware, *inter alia*, of potential commitment to the Department of Corrections. See also *In re Michael B.* (1980), 28 Cal. 3d 548, 169 Cal. Rptr. 723, 620 P.2d 173.

■ The standard for determining what due process requires in any juvenile proceeding is "fundamental fairness." (*People v. Taylor* (1979), 76 Ill. 2d 289, 302, 391 N.E.2d 366; see generally *McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976.) Where, as here, respondent was never advised he could be placed in the Department of Corrections or informed of any consequences of his admission and, in fact, was so committed, we hold his admission was not voluntarily and intelligently made so that the requirement of "fundamental fairness" was met. While the State argues that the admission was made in the presence of counsel and the assistance of his counsel can be "relied upon" to assure that respondent was aware of the consequences of his admission, a voluntary and intelligent waiver cannot be presumed from a silent record. (*Boykin v. Alabama* (1969), 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709.) Reliance on counsel's statement that he informed a minor of his constitutional rights must also be in the

record (see *In re Haggins* (1977), 67 Ill. 2d 102, 106, 364 N.E.2d 54; *In re Beasley* (1977), 66 Ill. 2d 385, 396-97, 362 N.E.2d 1024), and we cannot presume a minor had the requisite knowledge merely because he had counsel present. (*In re D.S.* (1984), 122 Ill. App. 3d 326, 329, 461 N.E.2d 527; *In re Starks* (1978), 60 Ill. App. 3d 934, 936, 377 N.E.2d 590.) Here, the record discloses no admonition by the trial judge of possible commitment to the Department of Corrections (or placement in any such institution), no indication by respondent's counsel that he informed respondent of that potential disposition, and no showing that respondent by reason of any prior court proceeding was familiar with this possible disposition.

We emphasize that in determining respondent did not make a voluntary and intelligent admission due to the trial judge's failure to advise him of the possible consequence of commitment to the Department of Corrections where respondent was, in fact, so committed, we do so on the particular facts in this record, which also included the total lack of any admonition of consequences, as indicated above. We believe most judges in juvenile court take great care in advising a minor of the possible dispositional consequences of an admission of a delinquent act charged in a petition which normally would include an admonishment that the minor may be made a ward of the court (Ill. Rev. Stat., 1984 Supp., ch. 37, par. 704—8(2)), and that he may be placed on probation or conditional discharge, placed in a home other than his present home, or committed to the Department of Corrections (Ill. Rev. Stat., 1984 Supp., ch. 37, par. 705—2(1)(a)).

As we conclude respondent did not make a voluntary and intelligent admission for the reasons stated above, we vacate the adjudication of delinquency, the subsequent entry of wardship, and commitment to the Department of Corrections, and remand for a new adjudication hearing. In view of this disposition, we need not consider respondent's further contention that his admission was not voluntary because of his borderline mental retardation level.

Respondent has raised four other contentions on appeal and, as those issues may arise in any proceeding on remand, it is necessary to briefly address them.

Respondent contends that it was error for the trial judge to make a finding of wardship at the adjudication hearing rather than at the dispositional hearing. The State on appeal acknowledges that, effective January 1, 1984, the Juvenile Court Act now provides that a juvenile court shall make a determination of wardship at the minor's dispositional hearing. (Ill. Rev. Stat., 1984 Supp., ch. 37, pars. 704—8(2), 705—1(1); *In re G.L.* (1985), 133 Ill. App. 3d 1048, 1053, 479 N.E.2d

1234.) On remand, should the respondent be found to be delinquent, the determination of wardship shall be made at the dispositional hearing.

■ Respondent next contends that section 5—2(1)(a)(5) of the Juvenile Court Act "mandates that the court must find that a similarly situated adult could be incarcerated on the same offense before the court may be permitted to commit the minor" to the Department of Corrections. He argues that the trial judge's findings were inconsistent on the record. Section 5—2 describes the kinds of orders of disposition which may be made in respect to wards of the court, and provides in subsection (1)(a)(5) that "commitment to the Department of Corrections, Juvenile Division, shall be made only if a term of incarceration is permitted by law for adults found guilty of the offense for which the minor was adjudicated delinquent." Ill. Rev. Stat., 1984 Supp., ch. 37, par. 705—2(1)(a)(5).

From our reading of the statute, we conclude that the trial judge is not required to make any "finding" under this subsection, but is only permitted to enter a dispositional order of commitment to the Department of Corrections, Juvenile Division, if a term of incarceration is permitted by law for an adult found guilty of the same offense. Nor can we read into this provision, as apparently contended by respondent, any mandate that the court must find that a "similarly situated adult could be incarcerated" on the same offense. The statute is clear that a dispositional order of commitment to the Department of Corrections for an adjudicated delinquent may be made if a term of incarceration is "permitted" by law for an adult found guilty of the same offense, and is not dependent on whether it is likely that the adult offender would actually be incarcerated.

■ In a related argument, respondent maintains that he cannot be committed to the Department of Corrections, Juvenile Division, because an adult convicted of a misdemeanor offense cannot be sentenced to the Department of Corrections, Adult Division, but is now committed to the custody of the county sheriff if the term of imprisonment is less than one year. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—6(b).) He further reasons that pursuant to section 1—2(3)(a) of the Act, which sets forth that "[t]he procedural rights assured to the minor shall be the rights of adults unless specifically precluded by laws which would enhance the protection of such minors" (Ill. Rev. Stat. 1983, ch. 37, par. 701—2(3)(a)), he has the same procedural right as an adult has not to be confined in the Department of Corrections for a misdemeanor offense.

This contention is meritless. The Juvenile Court Act specifically provides for commitment in the Department of Corrections, Juvenile

Division, as an authorized disposition which "may" be imposed where a juvenile is found to be delinquent. (Ill. Rev. Stat. 1983, ch. 37, pars. 705—2(1)(a)(5) and 705—10; see *In re Griffin* (1982), 92 Ill. 2d 48, 53-54, 440 N.E.2d 852.) Proceedings instituted under the Juvenile Court Act are not criminal in nature, and section 1—2(3)(a) does not extend to or guarantee to minors in juvenile proceedings all the rights accorded adult defendants in criminal proceedings. (See *In re S.R.H.* (1983), 96 Ill. 2d 138, 143, 449 N.E.2d 129.) The limitation in section 5—2(1)(a)(5) that commitment to the Department of Corrections shall be made "only if a term of incarceration is permitted by law for adults found guilty of the offense for which the minor was adjudicated delinquent" was intended only to prevent commitment of delinquents to the Department of Corrections who only commit a petty or business offense. (Ill. Ann. Stat., ch. 37, par. 705—2(1)(a)(5), Council Commentary, at 238 (Smith-Hurd Supp. 1985).) Thus, we reject respondent's argument that under section 1—2(3)(a) he has a procedural right not to be committed to the Department of Corrections for a misdemeanor offense.

Respondent's last contention is that his indeterminate sentence to the Department of Corrections violates his constitutional guarantees of due process and fair treatment. In essence, he argues that his potential incarceration as a juvenile is far longer than that he could have received if he were an adult or if prosecuted as an adult. While we need not address this issue because respondent's disposition of commitment to the Department of Corrections has been vacated for other reasons set forth herein, we point out that both due process and equal protection violation arguments directed to the dispositional scheme of indeterminate commitment under the Juvenile Court Act have been rejected by this court in *In re T.D.* (1980), 81 Ill. App. 3d 369, 401 N.E.2d 275.

For the foregoing reasons, respondent's adjudications of delinquency, wardship, and commitment to the Department of Corrections are vacated and reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

LINDBERG and UNVERZAGT, JJ., concur.