*In re* S.P., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. S.P., Respondent-Appellant).

First District (1st Division)   No. 1—96—3302

Opinion filed June 8, 1998.

Rita A. Fry, Public Defender, of Chicago (Julie A. Hull, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Elizabeth A. McDevitt, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GALLAGHER delivered the opinion of the court:

A jury found the juvenile respondent, S.P., delinquent of attempted armed robbery. Pursuant to the habitual juvenile offender statute, section 5—35 of the Juvenile Court Act of 1987 (705 ILCS 405/5—35 (West 1996)), the trial court committed respondent to the Illinois Department of Corrections, youth division, until his twenty-first birthday. On appeal, respondent contends that the habitual juvenile offender statute was erroneously applied to him, where respondent's two prior adjudications of delinquency did not result in his being adjudged a ward of the court.

The facts of the case are as follows. Respondent was adjudicated delinquent on July 20, 1994, under petition No. 94 JD 6890, for the felony offense of possession of a controlled substance. This offense occurred on April 3, 1994. Respondent was ordered to return to court for a dispositional hearing on September 14, 1994. Because he failed to appear on that date, a juvenile arrest warrant was issued for respondent. This arrest warrant was executed on May 21, 1995, when respondent was again arrested for the felony offense of possession of a controlled substance. Respondent's subsequent arrest formed the basis for petition No. 95 JD 8210; this latter petition also resulted in respondent's being adjudicated delinquent, this time on June 7, 1995. The dispositional hearing for both cases, petition Nos. 94 JD 6890 and 95 JD 8210, occurred on July 19, 1995, wherein respondent was (among other things) adjudged a ward of the court and placed on probation for one year.

A few months later, respondent was arrested for the present offense, attempted armed robbery, on January 11, 1996 (petition No. 96 JD 00708). The State moved to prosecute respondent as an habitual juvenile offender. Respondent moved to strike the State's motion, arguing that judgment was not entered on his two previous adjudications of delinquency until the July 19, 1995, dispositional hearing; as a result, respondent did not qualify as an habitual juvenile offender. The trial court denied respondent's motion.

The jury found respondent, S.P., delinquent of attempted armed robbery. A dispositional hearing was held on July 3, 1996. At that hearing, the State presented certified copies of the dispositions in No. 94 JD 6890 and No. 95 JD 8210. The trial court adjudged respondent a ward of the court. As required by the habitual juvenile offender statute, the trial court then committed respondent to the Illinois Department of Corrections, youth division, until his twenty-first birthday. 705 ILCS 405/5—35(f) (West 1996).

Respondent asserts that the trial court erroneously determined that he qualified to be sentenced as an habitual juvenile offender. In his brief, respondent frames the issue as follows:

"Whether the term '**adjudicated a delinquent minor**' under the Habitual Juvenile Offender statute means a mere finding of delinquency on the offense(s) alleged in the Petition for Adjudication of Wardship or whether it means, in addition to a finding of delinquency, an Adjudication of Wardship and a Dispositional Order have been entered." (Emphasis in original.)

In support of his contention that the trial court erroneously committed him pursuant to the habitual juvenile offender statute, respondent argues: (1) the trial court's holding denied respondent all of the procedural rights of an adult in a criminal proceeding, in violation of the purpose and policy of the Juvenile Court Act of 1987 (Juvenile Court Act or Act) (705 ILCS 405/1—2(3)(a) (West 1996)); and (2) prosecuting respondent, and those similarly situated, as an habitual juvenile offender frustrates the purpose of the habitual juvenile offender statute because respondent is denied the full opportunity to utilize the rehabilitative services available under the Juvenile Court Act.

In the Juvenile Court Act, a "delinquent minor" is defined as "any minor who prior to his 17th birthday has violated or attempted to violate *** any federal or state law or municipal ordinance." 705 ILCS 405/5—3(1) (West 1996). Elsewhere in this act, an "habitual juvenile offender" is defined as follows:

"(a) Definition. Any minor having been twice adjudicated a delinquent minor for offenses which, had he been prosecuted as an adult, would have been felonies under the laws of this State, and who is thereafter adjudicated a delinquent minor for a third time shall be adjudged an Habitual Juvenile Offender where:

1. the third adjudication is for an offense occurring after adjudication on the second; and

2. the second adjudication was for an offense occurring after adjudication on the first; and

3. the third offense occurred after January 1, 1980; and

4. the third offense was based upon the commission of or attempted commission of the following offenses: *** robbery or armed robbery ***." 705 ILCS 405/5—35 (West 1996).

This court considered an argument similar to the one posed by respondent in *In re Stokes*, 108 Ill. App. 3d 637, 439 N.E.2d 514 (1982). In that case, the respondent asserted that sentencing under the habitual juvenile offender statute requires proof not only of prior findings of delinquency but also of prior adjudications of wardship on those findings. *Stokes*, 108 Ill. App. 3d at 642, 439 N.E.2d at 517-18. This court disagreed, holding that "[d]elinquency and wardship are distinct concepts." 108 Ill. App. 3d at 642, 439 N.E.2d at 518. The court went on to note that the plain language of the Act requires only prior adjudications of delinquency, expressly rejecting the notion that a

minor must have been adjudged a ward of the court in order for the statute to apply. 108 Ill. App. 3d at 642, 439 N.E.2d at 518. We find that *Stokes* controls the outcome of this case.

In his brief, respondent fails to cite *In re Stokes*, let alone attempt to distinguish it from the case *sub judice*. At oral argument, respondent endeavored to distinguish *Stokes* by stating that, in *Stokes*, this court dealt only with the question of whether the State need establish prior adjudications of wardship before applying the habitual juvenile offender statute. By contrast, respondent purports to present the question of whether a dispositional order is required for each prior adjudication of delinquency before the habitual juvenile offender statute may apply.

Respondent offers this court a distinction without a difference. Upon an adjudication of delinquency, the trial court may resolve the case in one of two ways. First, the trial court conducts a dispositional hearing to determine whether the best interests of the minor and the public require that he be made a ward of the court, and, if so, the court shall determine the proper disposition best serving the interests of the minor and the public. 705 ILCS 405/5—22 (West 1996). Alternatively, if the trial court decides that an adjudication of wardship is not in the best interests of the minor and the public, it may dismiss the petition and discharge the minor—even after a finding of delinquency. *In re Beasley*, 66 Ill. 2d 385, 391, 362 N.E.2d 1026 (1977), *aff'g* 35 Ill. App. 3d 816, 342 N.E.2d 803 (1976). Thus, a dispositional order may not ensue without an underlying adjudication of wardship. 705 ILCS 405/5—23 (West 1996) (listing the types of dispositional orders that may be made respecting wards of the court).

Nevertheless, respondent argues that the trial court's ruling violates the purpose of the Juvenile Court Act because it denies respondent the same procedural rights afforded to adults. The Act states that, in every proceeding under the Juvenile Court Act, the "procedural rights assured to the minor shall be the rights of adults unless specifically precluded by laws which enhance the protection of such minors." 705 ILCS 405/1—2(3)(a) (West 1996).

Respondent notes that mere findings of guilt do not translate into convictions for adults; rather, a conviction is defined as a judgment of conviction or sentence entered upon a verdict, finding, or plea of guilty of an offense. 730 ILCS 5/5—1—5 (West 1996). Respondent analogizes a finding or verdict of delinquency to a finding or verdict of guilt, an adjudication of wardship and dispositional order to a sentence, and an adjudication of delinquency to a conviction. Essentially, respondent argues that he enjoys procedural rights identical to those offered to adult criminal defendants.

In support of his analogy, respondent cites *People v. Bryant,* 278 Ill. App. 3d 578, 663 N.E.2d 105 (1996). There, a defendant was sentenced to natural life imprisonment under the Habitual Criminal Act (720 ILCS 5/33B—1 (West 1996)). *Bryant,* 278 Ill. App. 3d at 580, 663 N.E.2d at 107. The court received into evidence certified copies of two convictions for armed robbery, where the offenses occurred in 1976. 278 Ill. App. 3d at 582, 639 N.E.2d at 108. The defendant received concurrent sentences of four and six years for the two offenses on the same day in 1978. The trial court in *Bryant* determined that "the two convictions based on the 1978 pleas qualified as the defendant's first conviction for purposes of the Habitual Criminal Act." 278 Ill. App. 3d at 582, 639 N.E.2d at 109. Respondent invites this court to apply the same logic to the present case.

■ We decline respondent's invitation. First and foremost, our supreme court has declared that juvenile delinquency proceedings are not criminal in nature, thus stripping much of the force from respondent's analogy. *In re Beasley,* 66 Ill. 2d at 390, 362 N.E.2d at 1025, quoting *McKeiver v. Pennsylvania,* 403 U.S. 528, 541, 29 L. Ed. 2d 647, 658, 91 S. Ct. 1976, 1984 (1971). Moreover, as noted above, an adjudication of wardship occurs upon a finding of delinquency only where the court determines that such a result is in the best interests of the minor and the public (*In re Stokes,* 108 Ill. App. 3d at 642, 439 N.E.2d at 518, citing *In re J.R.,* 82 Ill. App. 3d 714, 403 N.E.2d 114 (1980)); the trial court may even dismiss the petition and discharge the minor if the court, in its discretion, chooses not to adjudge the minor a ward of the court (*Beasley,* 66 Ill. 2d at 391, 362 N.E.2d at 1026). In contrast, several offenses under the Unified Code of Corrections carry mandatory minimum sentences upon a plea, finding or verdict of guilty. 730 ILCS 5/5—8—1 (West 1996). These facts weaken respondent's implicit position—that courts should apply the habitual juvenile offender statute in a fashion identical to the Habitual Criminal Act.

Furthermore, the habitual juvenile offender statute may be construed as a "law which enhances the protection of *** minors" and therefore properly alters the procedural rights of respondent, in keeping with the language of section 1—2(3)(a) (705 ILCS 405/1—2(3)(a) (West 1996)). In the present case, respondent was adjudicated delinquent for attempted armed robbery, a Class 1 felony carrying a minimum sentence of four years for adults. See generally 720 ILCS 5/8—4(c)(2), 18—2(b) (West 1996); 730 ILCS 5/5—8—1(a)(4) (West 1996). Respondent, born in June 1979, was 16 years and 7 months old when he was arrested in January 1996; thus, even under the habitual juvenile offender statute, respondent would be committed to the Depart-

ment of Corrections, youth division, for a maximum period of four years and five months. Given the serious nature of respondent's conduct (his accomplice was shot and killed by police officers, implicating the potential for a felony murder charge if respondent were tried as an adult), one might characterize the habitual juvenile offender statute as offering respondent enhanced protection from a significantly longer period of incarceration had he been tried and convicted in a criminal proceeding. Arguably, this enhanced protection justifies any departure from the procedural rights of criminal defendants.

Finally, respondent argues that the purpose of the habitual juvenile offender statute was to incarcerate until age 21 only those minors who had received *two* prior rehabilitative opportunities and yet still committed a third serious offense. Respondent finds authority for this position in *People ex rel. Carey v. Chrastka*, 83 Ill. 2d 67, 80, 413 N.E.2d 1269, 1276 (1980) (statute's predominant purpose is "to protect society from an individual who, having committed three serious offenses, would appear to have gained little from the rehabilitative measures of the juvenile court system"). Because he failed to receive any rehabilitation services in conjunction with his first adjudication of delinquency, respondent asserts that applying the habitual juvenile offender statute in his case is somehow inappropriate.

Respondent's theory is flawed. First, the record shows that respondent failed to appear at his first dispositional hearing, preemptively absenting himself from any rehabilitation services the juvenile court might have offered. In light of this fact, the State argues that adoption of respondent's theory—requiring full adjudications of wardship before applying the habitual juvenile offender statute—would similarly encourage juveniles adjudicated delinquent to avoid attending any dispositional hearing. At oral argument, respondent attempted to minimize this fact by claiming that he was addicted to drugs and that the State should have known he would not appear for his dispositional hearing on petition No. 94 JD 6890. Nothing in the record supports respondent's claim. Thus, our first basis for rejecting respondent's "rehabilitation opportunity" argument is the fact that respondent himself avoided his first opportunity for rehabilitation.

A second, related flaw stems from the concept that "wardship does not automatically arise from a finding of delinquency" (*In re Stokes*, 108 Ill. App. 3d at 642, 439 N.E.2d at 518, citing *In re Beasley*, 66 Ill. 2d 385, 362 N.E.2d 1024) and that the legislature intended to use mere adjudications of delinquency as the triggering mechanism for the habitual juvenile offender statute with full knowledge of the wardship/delinquency distinction. The Juvenile Court Act authorizes an adjudication of wardship only where "it is in the best interests of the

minor and the public." 705 ILCS 405/5—22 (West 1996). Removal of the minor from parental custody may occur "only when his or her welfare or safety or the protection of the public cannot be adequately safeguarded without removal." 705 ILCS 405/1—2(1) (West 1996). The language in these provisions suggests that first-time delinquents may not always be adjudged wards of the court; only infrequently will such first-time delinquents be removed from parental custody. Had the legislature desired to apply the habitual juvenile offender statute only to those minors who had received two prior measures of court-supervised rehabilitation (which may be imposed only upon those minors adjudged to be wards of the court), presumably the statutory language would require two prior adjudications of wardship. In Illinois, the language of a statute must be given its plain and ordinary meaning. *People v. J.A.*, 127 Ill. App. 3d 811, 469 N.E.2d 449 (1984). Because the statute premises its application upon two prior adjudications of delinquency and not adjudications of wardship, nothing in the statutory language suggests a requirement of multiple opportunities for court-supervised rehabilitation. *Stokes*, 108 Ill. App. 3d at 642, 439 N.E.2d at 518.

For the aforementioned reasons, we affirm the judgment of the trial court.

Affirmed.

BUCKLEY, P.J., and O'MARA FROSSARD, J., concur.