2025 IL App (1st) 250218

No. 1-25-0218

Opinion filed November 21, 2025

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| *In re* S.R., a Minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County, |
| | ) | Juvenile Justice |
| Petitioner-Appellee, | ) | Division. |
| | ) | |
| v. | ) | No. 24 JD 00407 |
| | ) | |
| S.R., | ) | Honorable |
| | ) | Terrence V. Sharkey, |
| Respondent-Appellant.) | ) | Judge Presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Tailor concurred in the judgment and opinion.
Justice Oden Johnson dissented, with opinion.

**OPINION**

¶ 1   Following a bench trial, the circuit court adjudicated respondent S.R. a delinquent minor

(705 ILCS 405/5-620 (West 2024)) in connection with his unlawful use of a weapon (720 ILCS

5/24-1(a)(7)(i) (West 2024)), aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1) (West

2022)), and unlawful possession of a firearm and firearm ammunition (*id.* § 24-3.1). At sentencing,

the circuit court determined that S.R. was a violent juvenile offender (705 ILCS 405/5-820(a)

(West 2024)) and adjudicated him a ward of the court. S.R. was committed to the custody of the

Illinois Department of Juvenile Justice, and while this appeal was still being briefed, he was released from custody on June 29, 2025.

¶ 2     The first issue that S.R. raises on appeal is whether the circuit court abused its discretion in declining to accept S.R.'s guilty plea at his initial court appearance because, while S.R.'s parents had not been notified of the case, S.R. nonetheless wanted to enter an otherwise knowing and voluntary plea after consultation with his lawyer. The circuit court's refusal to accept S.R.'s guilty plea without parental notification had the effect of affording the State additional time in which to file a violent juvenile offender notice, which subjected S.R. to additional penalties.

¶ 3     In addition, S.R. contends that the circuit court erred in failing to strike the State's notice to prosecute him as a violent juvenile offender. He argues that the notice was deficient because he did not yet have a prior qualifying adjudication: he had pled guilty but had not yet been sentenced in that case (No. 23-JD-997). Further, he contends that the notice was facially deficient because it failed to indicate whether the prior offense was a Class 2 or greater felony.

¶ 4     He also asserts that the State failed to meet its burden to prove that S.R. was a violent juvenile offender at the sentencing hearing where the certified statements of conviction did not indicate that he had been previously adjudicated delinquent for a Class 2 or greater felony involving the use of or threat of force, violence against another individual, or possession of a firearm. Finally, he argues that the circuit court erred in calculating S.R.'s sentencing credit where the circuit court held S.R. on pretrial detention on another case but released S.R. on his own recognizance in this case.

¶ 5                                I. BACKGROUND

¶ 6     On March 7, 2024, police observed minor-respondent, S.R., attempting to place a handgun into the front of his jacket as he entered a gangway in Chicago, Illinois. S.R. fled after he saw the

2

police. He eventually fell and dropped the handgun. Police arrested S.R. and recovered the handgun, which had an automatic switch. S.R. was 17 years old at the time. He was on probation for aggravated unlawful use of a weapon (No. 22-JD-364) and was awaiting sentencing in another case where he pled guilty to Class 2 felony possession of a machine gun (No. 23-JD-997). In that latter case, he was released on electronic monitoring but cut off his monitoring bracelet and failed to appear at sentencing. On March 8, 2024, S.R. made an initial appearance before the circuit court on the State's petition for an adjudication of wardship in this case, which alleged that S.R. illegally possessed a handgun with an automatic switch. He was charged in the amended petition for adjudication of wardship with one count of unlawful use of a weapon, two counts of aggravated unlawful use of a weapon, and one count of unlawful possession of a firearm and firearm ammunition.

¶ 7      At the initial hearing, S.R. attempted to plead guilty. The circuit court declined to accept the plea because S.R.'s parents had not been served with summonses. Later that day, the State notified S.R. that because he was previously adjudicated delinquent for a qualifying offense, the State intended to prosecute him as a violent juvenile offender. In the months leading up to trial, the circuit court held S.R. under pretrial detention on S.R.'s machine gun case (No. 23-JD-997). S.R. repeatedly moved the circuit court to hold S.R. in pretrial detention in this case simultaneously so that S.R. might receive sentencing credit in the event that he was sentenced to a custodial term. The circuit court denied the motions.

¶ 8      At a bench trial, the circuit court adjudicated S.R. delinquent. At sentencing, the circuit court determined that S.R. was a violent juvenile offender and adjudicated him a ward of the court. S.R. was committed to the custody of the Illinois Department of Juvenile Justice for an indeterminate term, not to exceed S.R.'s twenty-first birthday. See *id.* § 5-750(3). The circuit court

denied S.R.'s motion to reduce the term by 139 days to account for each day that S.R. was held in pretrial detention after his arrest. This court granted S.R. leave to file a late notice of appeal. See Ill. S. Ct. R. 606 (eff. Apr. 15, 2024); R. 660 (eff. Oct. 1, 2001).

¶ 9                                    II. ANALYSIS

¶ 10                                    A. Guilty Plea

¶ 11    S.R. contends that the circuit court abused its discretion in declining to take S.R.'s guilty plea because the circuit court mistakenly concluded it lacked jurisdiction to take the plea without having previously notified S.R.'s parents of the proceeding. S.R.'s complaint is that the delay in notifying his parents worked to his disadvantage in this particular case, because the delay permitted the State to file a violent juvenile offender notice in the interim. The State contends that the circuit court properly exercised its discretion because, among other reasons, parental notice is required under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2024)).

¶ 12    We review a circuit court's refusal to accept a guilty plea for abuse of discretion. *People v. Peterson*, 311 Ill. App. 3d 38, 45 (1999). "[A] defendant does not have an absolute right to have a guilty plea accepted by the circuit court." *People v. Henderson*, 211 Ill. 2d 90, 103 (2004). A circuit court, for example, may properly decline a guilty plea where it is not knowing or voluntary, or where it lacks a factual basis. See *People v. Gray*, 2025 IL App (1st) 191086-B, ¶ 30; *People v. Ottomanelli*, 153 Ill. App. 3d 565, 569-71 (1987). The exercise of discretion requires the circuit court to examine the relevant facts, apply proper legal standards, and reach a reasonable conclusion. *Peterson*, 311 Ill. App. 3d at 46; see *People v. Allen*, 351 Ill. App. 3d 599, 605 (2004).

¶ 13    Here, the circuit court expressed its hesitation to accept S.R.'s guilty plea because his parents had yet to be notified of the charges against S.R.:

"The issue I have is though a custodian/parent, I believe, has to appear before a plea can be entered. That's my understanding of the statute. I'm not going to take the plea today. But at a future date either get the parent to come in or give me some case law that says I can do it because my thought process is minimally the custodial parent has to be served."

At a later hearing on a motion to reconsider, the circuit court explained its reasoning further:

"So in my belief, I needed the parents' involvement, to be present, to be aware, to give him guidance, even though he gets legal advice from an attorney. *** [H]e absolutely has the right to plead guilty if he wants to. He does so long as a parent or someone else, in my mind, a parent [has] been given notice and service and that was not the case at that time."

As the circuit court recognized, parents play a critical role in juvenile court proceedings. "Parents, guardians and legal custodians *shall* participate in the assessment and treatment of juveniles by assisting the juvenile to recognize and accept responsibility for the juvenile's delinquent behavior." (Emphasis added.) 705 ILCS 405/5-110 (West 2024). Indeed, under the Juvenile Court Act, "[u]pon the commencement of a delinquency prosecution, the clerk of the court shall issue a summons" to the minor's parent or legal guardian. *Id.* § 5-525(1)(a). The summons "shall require" the parent to "appear and answer the petition on the date set for the adjudicatory hearing." *Id.* § 5-525(1)(c). Parents and children have a constitutional right to parental notice under due process of law before an adjudication of delinquency. See *In re C.R.H.*, 163 Ill. 2d 263, 268-71 (1994), *overruled on other grounds by In re M.W.*, 232 Ill. 2d 408 (2009); *In re Gault*, 387 U.S. 1, 33-34 (1967) ("Due process of law requires notice of the sort we have described—that is, notice which would be deemed constitutionally adequate in a civil or criminal proceeding. It does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake

without giving them timely notice, in advance of the hearing, of the specific issues that they must meet.").

¶ 14 It is correct that the Juvenile Court Act does not expressly require parental notice prior to taking a guilty plea, but significantly, the Act vests the circuit court with discretion: "a plea of guilty may be accepted when the court has informed the minor of the consequences of the minor's plea and of the maximum penalty provided by law which may be imposed upon acceptance of the plea." 705 ILCS 405/5-605(2)(a) (West 2024). This provision is significant because it differs from the analogous provision in the Code of Criminal Procedure of 1963 applicable to adults, which provides that after the circuit court explains the specific consequences of pleading guilty, "if the defendant understandingly persists in his plea it shall be accepted by the court." 725 ILCS 5/113-4(c) (West 2024).

¶ 15 While older cases once held that the lack of parental notification deprived the circuit court of jurisdiction over a juvenile court case (see, *e.g.*, *People v. R.S.*, 104 Ill. 2d 1, 6 (1984)), our supreme court has since clarified that the failure to properly serve a juvenile's parents only limits personal jurisdiction over the parents (*M.W.*, 232 Ill. 2d at 426-27). It does not defeat the circuit court's subject matter jurisdiction over the case, which is tied to the State's filing of a petition. See *id.* at 427 (noting that "the circuit court did indeed have subject matter jurisdiction over the justiciable matter brought before it by" the State's delinquency petition); see also *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002) (explaining subject matter jurisdiction refers to the power of a court to hear and determine the general class of case, as framed by the complaint or petition). Thus, as S.R. argues, a circuit court could accept a guilty plea from a juvenile in the absence of parental notification if that plea did not impinge upon parental rights such as custody. Our supreme court has "repeatedly emphasized" that juvenile delinquency

proceedings have three distinct phases: "the findings phase, the adjudicatory phase, and the dispositional phase." *In re Veronica C.*, 239 Ill. 2d 134, 144 (2010). But there is an obvious connection between accepting a guilty plea in the findings phase and imposing a judgment in the dispositional phase that could impact parental rights.

¶ 16    There is not a categorical rule that precludes a circuit court from accepting a juvenile's plea of guilty in the absence of parental notification. It is a matter entrusted to the wisdom and discretion of trial judges to be made on a case-by-case basis. There are important due process considerations for both parent and child. The Juvenile Court Act envisions a robust role for parents in delinquency proceedings, and parental notification serves as an important baseline procedural protection. Every valid guilty plea must be knowing, intelligent, and voluntary, and contrary to S.R.'s contentions, it is not difficult to understand the benefit in parental participation in those conversations prior to a juvenile deciding to plead guilty. Indeed, the circuit court expressly articulated this as a commonsense basis for its decision to decline to accept S.R.'s plea. For all these reasons, the circuit court acted within its discretion when it declined to accept S.R.'s guilty plea.

¶ 17        B. Violent Juvenile Offender Notice and Qualifying Prior Adjudication

¶ 18    S.R. argues that the circuit court erred in denying his motion to strike the State's notice to prosecute him as a violent juvenile offender because he did not have a prior qualifying adjudication: he had only pled guilty in the other case (No. 23-JD-997) and had not yet been adjudged a ward of the court or sentenced. The State argues that the circuit court did not err because S.R.'s plea of guilty in the other case was sufficient to constitute a prior delinquency adjudication. We review questions of statutory interpretation *de novo*. *People v. Belk*, 203 Ill. 2d 187, 192 (2003).

¶ 19    Under the Juvenile Court Act, a minor "shall" be adjudicated a violent juvenile offender if they have previously been "adjudicated a delinquent minor" for a qualifying offense:

> "A minor having been previously adjudicated a delinquent minor for an offense which, had the minor been prosecuted as an adult, would have been a Class 2 or greater felony involving the use or threat of physical force or violence against an individual or a Class 2 or greater felony for which an element of the offense is possession or use of a firearm, and who is thereafter adjudicated a delinquent minor for a second time for any of those offenses shall be adjudicated a Violent Juvenile Offender if:
>
> > (1) The second adjudication is for an offense occurring after adjudication on the first; and
>
> > (2) The second offense occurred on or after January 1, 1995." 705 ILCS 405/5-820(a) (West 2024).

The Juvenile Court Act requires that the State serve written notice of its intention to prosecute under this provision within five days of filing a delinquency petition. *Id.* § 5-820(b).

¶ 20    Does a juvenile's guilty plea satisfy the statutory requirement that the minor be "adjudicated a delinquent minor" in order to charge him as a violent juvenile offender? The question is one of first impression and one that is complicated by the unique nomenclature of the Juvenile Court Act and (sometimes) inapt comparisons to criminal court. The statute does not define the relevant terms, but our supreme court has held that "a finding of guilt and a finding of delinquency are one and the same." *Veronica C.*, 239 Ill. 2d at 145. Indeed, more recently the supreme court has explained this again:

> "If the court finds the minor guilty, a delinquency finding is made and the court proceeds to the adjudicatory phase. At the adjudicatory phase, the court determines if the minor

8

should be made a ward of the court. If the minor is made a ward of the court, the case then

proceeds to the dispositional phase, at which the court fashions an appropriate sentence."

*In re Michael D.*, 2015 IL 119178, ¶ 13.

See *In re J.N.*, 91 Ill. 2d 122, 128 (1982) (explaining that a "finding of guilt" of the underlying

criminal offense made in open court and in a written order is sufficient to constitute a finding of

delinquency). In light of this judicial gloss and the equivalence between a finding of guilt and a

finding of delinquency, a circuit court's finding of guilt based on a guilty plea necessarily causes

the minor to be "adjudicated a delinquent minor." 705 ILCS 405/5-820(a) (West 2024). The guilty

plea alone satisfies the statutory requirement.

¶ 21     In interpreting the same phrase ("adjudicated a delinquent minor") in the Juvenile Court

Act pertaining to a habitual juvenile offender, this court has twice concluded the plain language

requires only an adjudication of delinquency. In *In re Stokes*, 108 Ill. App. 3d 637, 642 (1982), the

court held that the phrase "adjudicated a delinquent minor" did not require an adjudication of

wardship: "Delinquency and wardship are distinct concepts. *** This Act requires only prior

adjudication of delinquency. There is no express requirement that the minor must have been

adjudged a ward of the court ***." Similarly, in *In re S.P.*, 297 Ill. App. 3d 234, 236-37 (1998),

this court again held that the phrase "adjudicated a delinquent minor" only requires an adjudication

of delinquency. The *S.P.* court further reasoned that "the legislature intended to use mere

adjudications of delinquency as the triggering mechanism for the habitual juvenile offender statute

with full knowledge of the wardship/delinquency distinction." *Id.* at 239.

¶ 22     The habitual juvenile offender statute and the violent juvenile offender statute are each part

of the Juvenile Court Act, and when those statutes use the identical phrase "adjudicated a

delinquent minor," it should be given the same meaning. See *In re Dave L.*, 2017 IL App (1st)

170152, ¶ 39; compare 705 ILCS 405/5-815 (West 2024) (habitual juvenile offender), with 705 ILCS 405/5-820 (West 2024) (violent juvenile offender). Our interpretations of these provisions are equally applicable to the other.

¶ 23   Acknowledging that our court in *S.P.* interpreted identical language, S.R. argues that *S.P.* (and presumably *Stokes* as well) is wrongly decided and in conflict with our decision in *In re M.G.*, 301 Ill. App. 3d 401, 408 (1998). In *M.G.*, while rejecting a constitutional challenge to the violent juvenile offender statute, the court observed that "the juvenile had the opportunity to present mitigating evidence" prior to the disposition of the predicate offense. *Id.* And that was factually true: the predicate offense in that case had proceeded to the dispositional phase. *Id.* at 404. But the *M.G.* court was not parsing the meaning of "adjudicated a delinquent minor," and it did not hold that the statute requires that the predicate offense *must* proceed to the dispositional phase. See *id.* at 408.

¶ 24   S.R. argues that analogous concepts in criminal court mandate a different result: a guilty plea in criminal court does not become a judgment of conviction until the court imposes a sentence (*People v. Salem*, 2016 IL App (3d) 120390, ¶ 45), and under the adult recidivism provisions (see 730 ILCS 5/5-4.5-95 (West 2024)), a guilty plea alone without sentencing does not constitute a qualifying predicate offense (*People v. Holmes*, 405 Ill. App. 3d 179, 186 (2010)). The obvious wrinkle is that juvenile delinquency proceedings are *not* criminal. *In re Beasley*, 66 Ill. 2d 385, 390 (1977). The Juvenile Court Act provides that the "procedural rights assured to the minor shall be the rights of adults unless specifically precluded by laws which enhance the protection of such minors." 705 ILCS 405/1-2(3)(a) (West 2024). The violent offender statute is just such a law that enhances the protection of minors: given S.R.'s conduct, in criminal court, he would have faced a significantly harsher penalty without the extensive rehabilitative opportunities offered to juveniles.

Further, an adjudication of wardship occurs after the circuit court determines that "such a result is in the best interests of the minor and the public." *S.P.*, 297 Ill. App. 3d at 238. Indeed, the circuit court can dismiss the petition and discharge the minor altogether if it "chooses not to adjudge the minor a ward of the court." *Id.* This flexibility in juvenile court proceedings simply does not exist in criminal court, so analogizing to criminal court proceedings is unpersuasive at least when interpreting the violent juvenile offender statute.

¶ 25    In addition, S.R. argues that the circuit court erred in denying his motion to strike the State's violent juvenile offender notice because the notice failed to specify that the predicate offense, if prosecuted as an adult, would have been a Class 2 or greater felony. The notice letter stated that S.R. qualified because he was previously adjudicated a delinquent minor for aggravated unlawful use of a weapon, which can be a Class 2 or Class 4 felony. The argument fails, however, because the Juvenile Court Act only requires that the State "shall serve upon the minor written notice of intention to prosecute" the minor as a violent juvenile offender. 705 ILCS 405/5-820(b) (West 2024). The plain language only requires "notice of intention." *Id.* It does not require any description of the predicate offense. Moreover, the State's notice stated that to qualify as a violent juvenile offender, the minor must have previously been adjudicated delinquent for an offense that "would have been a Class 2 or greater felony involving the use or threat of physical force or violence against an individual, or a Class 2 or greater felony for which an element of the offense is possession or use of a firearm." The notice provided that S.R. was eligible because he "was adjudicated a delinquent minor on October 13, 2023, for the offense of Aggravated Unlawful Use of a Weapon." Thus, the notice was more than sufficient.

¶ 26                    C. Proof of Predicate Offense

¶ 27    S.R. argues that the State failed to prove the predicate, qualifying offense under the violent juvenile offender statute because the certified statement of conviction tendered to the circuit court at his sentencing hearing did not specify the class of the offense. The State contends that it met its *prima facie* burden with the certified statement of conviction, and further, the circuit court properly took judicial notice of the class of the predicate offense since it took S.R.'s guilty plea in that prior case.

¶ 28    The State argues that we should review the question of adequacy of proof under a sufficiency of the evidence standard, but the authority upon which it relies is inapposite. In *People v. McDonald*, 168 Ill. 2d 420, 451 (1995), and *People v. West*, 187 Ill. 2d 418, 436 (1999), our supreme court applied a sufficiency standard in reviewing a jury determination as to death penalty eligibility that itself required proof beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 316 (1979) (explaining that under due process of law, "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense"). In his briefs, S.R. failed to address the appropriate standard of review altogether. Generally, when we review a circuit court's factual determination on the existence of a predicate or qualifying offense at sentencing, we ask whether the finding is "against the manifest weight of the evidence." See generally *People v. Deleon*, 227 Ill. 2d 322, 332 (2008) (reviewing a trial judge's factual determination that consecutive sentences were warranted using the manifest weight of evidence standard); see also *People v. Morgan*, 2025 IL 130626, ¶ 20 (explaining "[q]uestions requiring the circuit court to make a factual finding are *generally* reviewed under the manifest weight of the evidence standard" (emphasis in original)).

¶ 29    Again, the juvenile offender statute applies to a minor who has been "adjudicated a delinquent minor for an offense which, had the minor been prosecuted as an adult, would have been a Class 2 or greater felony involving the use *** of physical force or *** for which an element of the offense is possession or use of a firearm" and who is adjudicated a delinquent minor a second time for another qualifying offense in a subsequent case. 705 ILCS 405/5-820(a) (West 2024). The statute suggests various methods by which the State *may* prove the prior adjudications:

> "After an admission of the facts in the petition or adjudication of delinquency, the State's Attorney may file with the court a verified written statement signed by the State's Attorney concerning any prior adjudication of an offense set forth in subsection (a) of this Section ***.
>
> ***
>
> A duly authenticated copy of the record of any alleged prior adjudication shall be prima facie evidence of the prior adjudication ***.
>
> Any claim that a previous adjudication offered by the State's Attorney is not a former adjudication of an offense which, had the minor been prosecuted as an adult, would have resulted in the minor's conviction of a Class 2 or greater felony involving the use or threat of force or violence, or a firearm *** is waived unless duly raised at the hearing on the adjudication, or unless the State's Attorney's proof shows that the prior adjudication was not based upon proof of what would have been a felony." *Id.* § 5-820(e).

The statute does not prescribe the quantum of proof, but in an analogous context, the Illinois Supreme Court held that the State must prove that the defendant was previously convicted of qualifying felonies by a preponderance of the evidence. See *People v. Robinson*, 167 Ill. 2d 53, 75-76 (1995); see also *People v. Brown*, 2023 IL App (3d) 210460, ¶ 98 ("The prosecution must

prove defendant's eligibility for an enhanced sentence by a preponderance of the evidence." (citing *Robinson*, 167 Ill. 2d at 71-73)).

¶ 30    Here, to prove the qualifying, predicate offense, the State relied on what is styled a "Certified Statement of Conviction/Disposition" from the clerk of the circuit court of Cook County. That document, however, does not specify the specific offense or class of offense on which S.R. had already been adjudicated a delinquent minor. It proves nothing: neither the class of the offense nor its connection to the use of a firearm.

¶ 31    In the proceedings below, the circuit court overruled S.R.'s objection to the adequacy of the State's proof and in doing so, relied on its own personal knowledge of S.R.'s plea of guilty in the prior case:

> "THE COURT: I was the judge that was involved in the pleas and the sentencings on the other cases and I believe they've met the burden under the Violent Juvenile Offender Act.
>
> So I am finding the minor to be guilty of a Violent Juvenile Offender Act."

On appeal, the State contends that the circuit court could take judicial notice of S.R.'s prior adjudications. Under Illinois Rule of Evidence 201(b) (eff. Jan. 1, 2011), a judicially noticed fact must be "one not subject to reasonable dispute in that it is either (1) generally known *** or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Typically, the information sought to be judicially noticed is made known to the circuit court, and there is an opportunity for the opposing party to object. Ill. R. Evid. 201(e) (eff. Jan. 1, 2011); see *People v. Davis*, 65 Ill. 2d 157, 165 (1976) (explaining defendant had an opportunity to oppose judicial notice but did not deny the accuracy of the noticed fact). S.R.'s prior adjudications are *not* generally known, and the State offered no information that the

14

circuit court could notice (*e.g.*, a court order or transcript). Instead, the circuit court without invitation or notice seemed to rely upon its own personal knowledge of the prior adjudications, and that presents a potential due process issue. *Cf. People v. Wallenberg*, 24 Ill. 2d 350, 354 (1962) (explaining a circuit court errs in a bench trial where the judge considers his or her own "personal beliefs" and "matters which were not in evidence"); *People v. Petrov*, 2023 IL App (1st) 160498, ¶ 59 (same).

¶ 32     Nevertheless, if it was error for the circuit court to rely on personal knowledge, the error was harmless. The record in *this* case establishes clearly and irrefutably that S.R. pled guilty to what would have been a Class 2 felony in connection with his possession of a machine gun. *First*, the transcript from the prior plea hearing was made of record in this case and is included in the record on appeal. In the plea colloquy, S.R. admits that he understands he is pleading guilty to what would be a Class 2 felony:

> "THE COURT: Okay. It's Class 2 felony, so the minimum sentence would be a period of probation. The maximum sentence on a Class 2 could be seven years in jail. ***
>
> So you understand the minimum and the maximum sentence?
>
> S.R.: Yeah, Judge."

Further, the colloquy sets out the factual basis for the plea and S.R.'s stipulation to it:

> "THE COURT: Okay. [S.R.], if I believe that information at a trial, I would convict you of this unlawful possession of a machine gun today.
>
> Do you understand?
>
> S.R.: Yes, Judge, I understand.
>
> THE COURT: So it allows you to plead guilty to this charge if you want to plead guilty. [S.R.], do you want to plead guilty to this charge?

S.R.: Yeah, Judge."

A guilty plea is, of course, a judicial admission (*People v. Feldman*, 409 Ill. App. 3d 1124, 1128 (2011), *overruled on other grounds by People v. Walls*, 2022 IL 127965), and S.R. clearly admitted to a Class 2 felony in connection with possessing a machine gun in the prior case. *Second*, in S.R.'s memorandum of law in support of his motion to strike the State's notice under the violent juvenile offender statute, S.R. again admitted that the prior disposition was a Class 2 felony:

"On October 13, 2023, the Minor Respondent, [S.R.], pled guilty to a class 2 offense of Aggravated Unlawful Use of a Weapon (720 ILCS 5/24-1.6(a)(2)) on petition 23JD997 with all remaining counts being dismissed, and was found guilty ***."

This constitutes another judicial admission consistent with the plea colloquy, and it also is contained in the record on appeal.

¶ 33    Thus, the record before this court unequivocally demonstrates that S.R. pled guilty to a Class 2 felony in connection with possession of a machine gun. Against this backdrop, there simply is no basis to conclude that the circuit court's finding related to the occurrence of the predicate offense was against the manifest weight of the evidence. See *In re Estate of Funk*, 221 Ill. 2d 30, 86 (2006) ("A reviewing court may sustain the decision of a lower court on any grounds which are called for by the record ***.").

¶ 34                                    D. Custody Credit

¶ 35    S.R. argues that the circuit court erred in denying S.R.'s motion for custody credit because, under Illinois law, a criminal defendant held simultaneously on two separate charges accrues sentencing credit for that time in both cases. The State concedes that would be true but for the fact that S.R. was not being held in this case—the circuit court denied his motion to be held in this case and ordered him held only on the prior machine gun case (No. 23-JD-997). According to the State,

the circuit court did not abuse its discretion in refusing to detain S.R. in this case or in denying him custody credit in this case for time spent in custody for the prior machine gun case.

¶ 36    Under the Unified Code of Corrections, a criminal defendant "is entitled to statutory credit for time spent in custody as a result of the offense for which the sentence was imposed." *In re E.W.*, 2015 IL App (5th) 140341, ¶ 40; 730 ILCS 5/5-4.5-100(b) (West 2022). For juveniles, the Juvenile Court Act similarly requires that minors be given credit for time spent in detention as a result of the offense for which a sentence is imposed. *In re Jabari C.*, 2011 IL App (4th) 100295, ¶ 26; *In re Rakim V.*, 398 Ill. App. 3d 1057, 1059 (2010) ("A juvenile who is committed to [the Department of Juvenile Justice] for an indeterminate term *** is entitled to predisposition credit for the time he was incarcerated."). Pursuant to the Act, circuit courts must "include in the sentencing order any pre-custody credits the minor is entitled to" under the Unified Code of Corrections. 705 ILCS 405/5-710(1)(b) (West 2024) (citing 730 ILCS 5/5-4.5-100).

¶ 37    A minor may be detained pending adjudication if the circuit court finds there is an "immediate and urgent necessity" to do so for the protection of the minor or other persons or property or if the minor is likely to flee the jurisdiction. 705 ILCS 405/5-501(2) (West 2024).

¶ 38    Relevant here, when S.R. was arrested in this case (No. 24-JD-00407), his prior machine gun case (No. 23-JD-997) was pending sentencing, and a warrant had been issued for his arrest. S.R. was arrested in this case on March 7, 2024. The circuit court later vacated the hold on S.R. in this case and detained him solely in the prior machine gun case. Soon thereafter, S.R. began serving his sentence in that case. When S.R. was due to be released from custody, the circuit court detained S.R. again in this case at the State's request and ultimately sentenced S.R. in this case on July 24, 2024. We can see no discernible basis in the record for detaining S.R. in this case before and after detaining and sentencing him in the prior machine gun case but not in the interim. A defendant

simultaneously in presentence custody on two unrelated charges is entitled to credit for that time in both cases. See *People v. Robinson*, 172 Ill. 2d 452, 463 (1996); see also *People v. Chamberlain*, 354 Ill. App. 3d 1070, 1074-75 (2005) (applying *Robinson* to a defendant serving a sentence for one charge while in presentence custody as to another). We therefore direct the clerk of the circuit court to amend the mittimus to reflect a total of 139 days of presentence credit instead of the 46 originally granted. See *People v. Centeno*, 394 Ill. App. 3d 710, 715 (2009).

¶ 39                                    III. CONCLUSION

¶ 40    The judgment of the circuit court of Cook County is affirmed and modified.

¶ 41    Judgment affirmed; sentence modified with instructions to the clerk of the circuit court.


¶ 42    JUSTICE ODEN JOHNSON, dissenting:

¶ 43    For the reasons that I explain in more detail below, I would vacate defendant's sentence and remand for resentencing.  Thus, I must respectfully dissent.

¶ 44    Defendant argues, first, that the trial court erred in preventing him from pleading guilty when he wanted to plead.  On March 8, 2024, defense counsel informed the trial court that the minor defendant wanted to take a blind plea to all counts in the petition, and the following colloquy ensued:

> "THE COURT:  Okay. Unfortunately, [I] can't take the plea. Juvenile, parents not notified.
>
> [COUNSEL]:  Your Honor, the parents were notified to be here. You can take the plea at this time.  As long as they are given notice before sentencing they do not need to be here today.  The statute is very clear that someone may enter into a blind plea at any time.

They were given notice to be here. He was arrested. They are not here. The State cannot rely on the parents not attending to somehow subvert the blind plea. He is pleading guilty today to this petition in front of your Honor.

THE COURT: The issue I have is though a custodian/parent, I believe, has to appear before a plea can be entered. That's my understanding of the statute. I'm not going to take the plea today. But at a future date either get the parent to come in or give me some case law that says I can do it because my thought process is minimally the custodial parent has to be served."

¶ 45    The parties discussed the issue further, with counsel quoting the relevant statutory provisions and the State nonetheless arguing for the parents' presence. The trial court ruled: "My understanding though, and I'm pretty convinced that I'm right, is that I cannot take a plea or go to trial until a custodial parent has been served or appeared in court. I'm standing on that so I will not take a plea today." The court stated: "I would like both sides to do their research and let me know if I'm wrong. Please, give me some case law." Defense counsel pointed out the harm to the minor of the court's approach and how the State was manipulating the process to the minor's detriment:

"COUNSEL: The State is using their own advantage of not summoning the parents to court today when they have a minor in custody to get [the violent juvenile offender notice] filed within the five-day requirement."

¶ 46    On March 11, 2024, defense counsel filed a motion asking the trial court to enforce S.R.'s guilty plea as entered on March 8, 2024. The trial court denied the motion on March 20, 2024. While noting that, although a trial court generally has some discretion in deciding whether to accept a juvenile's plea, the trial court found that, in the case at bar, the court simply lacked the needed jurisdiction. The trial court found as a matter of law that, "if I will allow a minor to plead

19

without a parent being notified or getting subject matter jurisdiction over them, I think the sentence--a sentence could be voided or voidable at any time way down the line. So that's basically the reason that I didn't want to let the minor plead guilty."

¶ 47   As the majority observes, the trial court's refusal to accept S.R.'s guilty plea without parental notification had the effect of affording the State additional time in which to file a violent juvenile offender notice, which subjected S.R. to additional penalties. *Supra* ¶ 2. Further the majority acknowledges that defendant was correct that the Juvenile Court Act does not require parental notice prior to taking a guilty plea. *Supra* ¶ 14. The majority concedes that, "as S.R. argues, a circuit court could accept a guilty plea from a juvenile in the absence of parental notification," where the plea, as in this case, did not impinge upon the parents' custodial rights. *Supra* ¶ 15. Thus, all three justices on this panel agree that the trial court made a mistake in law. As a result, I would vacate the violent offender notice and remand for resentencing.

¶ 48   Nonetheless, the majority affirms on the ground that the trial court did not abuse its discretion. An abuse of discretion can be found where, after reviewing all the relevant evidence and facts, one can definitely and firmly conclude that the trial court committed a clear error of judgment in reaching its conclusion. *People v. Peterson*, 311 Ill. App. 3d 38, 45-46 (1999). A failure to apply proper legal standards, and thereby fail to identify the relevant facts, constitutes an abuse of discretion. *Peterson*, 311 Ill. App. 3d at 46. In the case at bar, the trial court made a mistake in law, as everyone on this panel agrees, and the trial court's legal mistake had harsh consequences for defendant. The State should not be allowed to exploit a court's legal mistake to a juvenile's detriment. Thus, I would reverse and remand for resentencing, as though defendant had pled guilty on the date on which he first sought to so plead.

20

¶ 49    Second, defendant argues that the trial court erred in denying his motion to strike the State's notice to prosecute him as a violent juvenile offender, because he did not yet have a prior qualifying adjudication.  Defendant argues that he lacked a qualifying adjudication where he pled guilty but had not yet been sentenced.  The Juvenile Court Act of 1987 expressly provides that, "[i]n all procedures under this Act *** the procedural rights assured to the minor shall be the rights of adults unless specifically precluded by laws which *enhance* the protection of minors." (Emphasis added.)  705 ILCS 405/1-2(3)(a) (West 2022).

¶ 50    To the extent that a juvenile is entitled to the same procedural rights as an adult, final judgment in a criminal case is not entered until the imposition of the sentence. *People v. Edgecombe*, 2011 IL App (1st) 092690, ¶ 31; *People v. Lopez*, 129 Ill. App. 3d 488, 491 (1984); 730 ILCS 5/5-1-12 (West 2022) (" 'Judgment' means an adjudication by the court that the defendant is guilty or not guilty, and if the adjudication is that the defendant is guilty, it includes the sentence pronounced by the court."). The final judgment in a criminal case is the sentence, and that had not yet happened in this case. *Edgecombe*, 2011 IL App (1st) 092690, ¶ 31; *Lopez*, 129 Ill. App. 3d at 491.

¶ 51    To the extent that a juvenile's procedural rights are different, it must be that the law "enhance[s]" the minor's protection. 705 ILCS 405/1-2(3)(a) (West 2022).  The majority quotes this language but fails to explain how its interpretation of the word "adjudication" (705 ILCS 405/5-820(a) (West 2024)) enhances the minor's protection.  The Act further emphasizes that it "shall be liberally construed to carry out the foregoing purpose and policy" of guaranteeing minors the *same* procedural rights, except where the law *enhances* their protection. 705 ILCS 4051-2(4) (West 2022).

¶ 52    However, instead of looking at the law in question, namely, the Violent Juvenile Offender Act, the majority says that this act is a part of the Juvenile Court Act and that, if you look at the Juvenile Court Act as a whole, it enhances minors' protection--because, after all, a juvenile is better off in juvenile court than in adult court. *Supra* ¶ 24. The majority thereby bypasses the fact that the passage of the Violent Juvenile Offender Act (705 ILCS 405/5-820(a) (West 2022) *increased* punishment for juveniles and was definitely *not* a law passed to enhance protection for minors. *In re M.G.*, 301 Ill. App. 3d 401, 407-08 (1998) (while the Habitual Juvenile Offender Act had mandated a disposition after a pattern of conduct, namely after two prior offenses, the Violent Juvenile Offender Act imposed the disposition "after only one prior offense.").

¶ 53    Defendant rightly asks us to reach the same conclusion as the appellate court in *People v. Holmes*, 405 Ill. App. 3d 179, 184 (2010).  In *Holmes*, 405 Ill. App. 3d at 184, the appellate court was tasked with defining the word 'conviction' in order to determine  whether the relevant statute permitted a trial court to issue an extended-term sentence. *Holmes*, 405 Ill. App. 3d at 184. The sentence was permitted only if the second qualifying conviction occurred before the commission of the offense at issue. *Holmes*, 405 Ill. App. 3d at 184.  Although the defendant in *Holmes* pled guilty before the offense at issue, he was not sentenced until after it. *Holmes*, 405 Ill. App. 3d at 184.  Thus, the *Holmes* defendant argued that his conviction did not occur until the later sentencing, while the State argued that the conviction had occurred at the earlier guilty plea.  *Holmes*, 405 Ill. app. 3d at 184.  In terms of the arguments posed by the parties, the issue before the *Holmes* court was analogous to  the issue before us, although ours is in a juvenile context.

¶ 54    The *Holmes* court held that the "defendant's conviction *** occurred on *** the date of sentencing."  *Holmes*, 405 Ill. App. 3d at 186.  The *Holmes* court found its holding was amply supported by supreme court precedent and statute.  *Holmes*, 405 Ill. App. 3d at 186.  First, the

*Holmes* court noted that our "supreme court's decisions ' make[] clear that the date of conviction is the date of the entry of the sentencing order.' " *Holmes*, 405 Ill. App. 3d at 186 (quoting *People v. Lemons*, 191 Ill. 2d 155, 160 (2000). Second, the *Holmes* court noted that the Unified Code of Corrections defined the word "conviction" and that this definition required entry of a "judgment." *Holmes*, 405 Ill. App. 3d at 186 (citing 730 ILCS 5/5-1-5 (West 1996)). "Judgment" was, in turn, defined as " 'an adjudication by the court that the defendant is guilty or not guilty, and *if the adjudication is that the defendant is guilty, it includes the sentence pronounced by the court*.' " (Emphasis in original.) *Holmes*, 405 Ill. App. 3d at 186 (quoting 730 ILCS 5/5-1-12 (West 2008)). Consistent therewith, I find it counterintuitive that a juvenile should enjoy less protection than the adult offender in *Holmes* or that it constitutes enhanced protection, as the Act specifically requires. 705 ILCS 4051-2(4) (West 2022).

¶ 55    Like the guilty plea in adult criminal court, a guilty plea in juvenile court is not a final judgment. "The final judgment in a juvenile delinquency case is the dispositional order." *In re Michael D.*, 2015 IL 119178, ¶ 13. Even after a juvenile's admission of guilt, the trial court may decide that wardship is not in the best interest of the minor and the public, dismiss the petition, and discharge the minor. *In re Beasley*, 66 Ill. 2d 385, 390-91 (1977). Affirming the Violent Juvenile Offender Act as constitutional, this court found: "On the predicate offense, the juvenile had the opportunity to present mitigating evidence that allowed the trial judge to exercise his or her discretion in determining an appropriate *disposition*." (Emphasis added.) *In re M.G.*, 301 Ill. App. 3d 401, 408 (1998). Thus, we affirmed the act's constitutionality on the basis that the predicate offense had already proceeded to and completed the disposition phase, where the juvenile had had the opportunity to present mitigating evidence. What we presumed would happen in *M.G.*- -before any enhancement applied--had not yet happened in this case.

¶ 56     The majority's reasoning has a key flaw.  The majority agrees that a trial court can dismiss a petition and discharge the minor altogether if it chooses not to adjudge the minor a ward of the court. *Supra* ¶ 24. However, its interpretation would lead to the anomaly that a juvenile could be found to be a violent offender based on a petition that the trial court later dismisses.  We should not interpret a statute in a way that yields absurd results. *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 27 (when a literal reading of a statute leads to absurd results or results that the legislature could not have intended, "courts are not bound to that construction, and the literal reading should yield.").

¶ 57     *In re S.P.*, 297 Ill. App. 3d 234 (1998), upon which the majority relies is factually distinguishable.  In *S.P.*, the minor was found delinquent of a drug possession offense on July 20, 1994, and of a second drug possession offense on June 7, 1995. The dispositional hearing for both cases was held on July 19, 1995, when he was made a ward of the State.  The disposition for both prior cases was, thus, wardship.  When he was arrested for a third offense, namely, attempted armed robbery, on January 11, 1996, the State moved to prosecute him under the Habitual Juvenile Offender Act which required two prior offenses.  *S.P.*, 297 Ill. App. 3d at 235. Unlike *S.P.*, where there were adjudications of wardship on two prior cases, here there were none.

¶ 58     Further, *S.P.* relied almost exclusively on *In the Interest of Stokes*, 108 Ill. App. 3d 637 (1982).  However, the over-40 year old *Stokes* interpreted a different, and now outdated, version of the Act -- and that's where the confusion began. *S.P.*, 297 Ill. App. 3d at 236-240 (repeatedly citing *Stokes* throughout).  For example, back in 1982, the trial court would determine whether the minor should be made a ward of the court and then proceed at a later time to a dispositional hearing. Il. Rev. Stat. 1981, chap. 37 ¶ 704-8 (2) (after the court finds the minor to be delinquent and adjudges him a ward of the court, it shall "proceed at an appropriate time to a dispositional

24

hearing"). In other words, the adjudication of wardship was made before the dispositional hearing. Now the adjudication of wardship is not made until the sentencing or dispositional hearing. 705 ILCS 405/5-620 (West 2024) (after the court finds the minor guilty, it shall then set a date for a sentencing hearing "at which hearing the court shall determine whether it is in the best interests of the minor and the public that the minor be made a ward of the court."). Hence, when we use the term "adjudication" and the 1982 court used the term "adjudication," we are talking about apples and oranges--hence, the confusion, and the problem with relying on decades-old cases when the law has changed in the interim. *In re Veronica C.* 239 Ill. 2d 134, 144-145 (2010) (noting the changes in terminology over the years).

¶ 59    Consider how many steps away from a final adjudication the majority has come. First, the majority equates a minor's guilty plea with a court's adjudication of delinquency, and then it equates that with the only adjudication needed to trigger an automatic sentence. *Supra* ¶¶ 20, 24. The word "adjudicate" commonly means to "make a formal judgment or decision about a problem or disputed matter." Oxford Languages, https://www.google.com/search>adjudicate (last viewed November 13, 2025); https://vocabularly.com>dicttionary>adjudicate ("To adjudicate is to act like a judge.") (last viewed November 13, 2025). However, under the majority's decision, there was no judgment by a judge regarding delinquency or wardship--and yet the majority still calls it an "adjudication."

¶ 60    The majority admits that, in the history of the Habitual Juvenile Offender Act and the Violent Juvenile Offender Act, no court has ever interpreted the word "adjudication" the way it does today. *Supra* ¶ 20. Shouldn't that be enough to make one wonder whether we have gone too far afield from what the word means? *In re Michael D.*, 2015 IL 119178, ¶ 13 ("the adjudicatory phase" is when "the court determines if the minor should be made a ward of the court"); *In re*

*Veronica C.*, 239 Ill. 2d 134, 145 (2010) ("the adjudicatory phase," which occurs at sentencing, is "where the court determines whether it is in the best interests of the minor and the public to make the minor a ward of the court").

¶ 61    For all the foregoing reasons, I respectfully dissent from the majority opinion and agree with defendant (1) that the trial court erred in preventing him from pleading guilty when he wanted to plead and (2) that the trial court erred in denying his motion to strike the State's notice to prosecute him as a violent juvenile offender because he did not yet have a prior qualifying adjudication.  As a result, I would reverse and remand for resentencing.  As such, I take no position on the other issues raised by defendant.

---

*In re S.R.*, 2025 IL App (1st) 250218

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24-JD-00407; the Hon. Terrence V. Sharkey, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Cristina Law Merriman, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Tasha-Marie Kelly, and Julie Riekse, Assistant State's Attorneys, of counsel), for the People. |

---